**UNITED STATES of America, Appellee,**

v.

**Robert Donald RUSSELL, Defendant, Appellant.**

**No. 88–1824.**

United States Court of Appeals, First Circuit.

Heard March 2, 1989.

Decided March 14, 1989.

Order After District Court Response March 30, 1989.

---

Owen S. Walker, Boston, Mass., for defendant, appellant.

Victor A. Wild, Asst. U.S. Atty., Boston, Mass., for appellee.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and BOWNES, Circuit Judge.

## MEMORANDUM AND ORDER

Defendant-appellant Robert D. Russell pleaded guilty to one count of bank larceny. The district court sentenced him to the minimum possible sentence within the guidelines issued pursuant to the Sentencing Reform Act—four months in a community treatment facility. Russell appeals on the ground that the district court may not have recognized that it had the power to impose a sentence *below* the guidelines.

Both appellant and the government agree that the district court may depart from the guidelines—whether upward or downward—in appropriate cases. In the Sentencing Reform Act, Congress made this power of the district court explicit:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) [the sentencing guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b) (1988). *See also United States v. Correa–Vargas*, 860 F.2d 35, 40 (2d Cir.1988) (endorsing the district courts' "exercise [of] their sound judgment in departing from the Guidelines").

Appellant Russell argues to us, as he did to the district court, that his case was a proper one for consideration of a sentence below the guideline minimum. Russell, the driver of a Wells Fargo armored truck, had no criminal record. A bank had mistakenly handed Russell's partner, the truck's messenger, an extra money bag containing $80,000. The men initially yielded to temptation and decided to keep the money. A week later, however, they admitted what they had done. Russell returned all the money that he had kept, and cooperated fully in the investigation of the crime. Russell argued that the district court should impose a sentence below the guideline minimum because Russell's conduct was a single episode of "aberrant behavior," it involved no planning, and Russell cooperated fully with the government and returned all the money.

In imposing sentence, the district court expressed sympathy for the predicament that faced Russell and his compatriot when an extra $80,000 was literally placed in their hands. The court stated:

> I recognize the limitations on the financial resources of these two gentlemen.
>
> I recognized that, when I first took into consideration what happens when $80,000 suddenly falls in your lap, and you're not a rich person. That certainly didn't fail to dawn upon me.

Sentencing Hearing Transcript at 38. The court took these circumstances into account in imposing sentence, noting "that's one

reason why I'm at the bottom of the guideline possibility of four to ten months." *Id.*

The district court did not make explicit, however, whether it considered the possibility of imposing a sentence *below* the guideline range by virtue of the arguably atypical nature of Russell's conduct.* The Sentencing Commission made clear that departures are permitted in atypical cases, at the sentencing judge's discretion:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

*United States Sentencing Commission Guidelines Manual* Introduction 4(b) Ch. 1, Part A, (rev. ed. 1988). Such "aberrant behavior" may involve, almost by definition, factors "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," 18 U.S.C. § 3553(b), and thus may justify departures in appropriate cases. *See Guidelines Manual* Ch. 1, Part A, Introduction 4(d) ("The Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures").

Appellant contends that two statements by the district court betray the misconception that the court lacked the power to make such a departure. At one point during the sentencing hearing, the court stated:

> It's my opinion that I should not go downward from the lowest level of the guideline here, that I am required, in my reading of the Act—and as I say, I'm not of opinion, but I am required—and I think Mr. Wild [the Assistant United States Attorney] feels the same way—to impose the four months at a minimum.

Sentencing Hearing Transcript at 28. At a later point, the district court stated:

> I feel that the culpability here is on the lower step of the ladder. But my interpretation of the Guideline Sentencing Act is such that I must give them at least the minimum.

*Id.* at 39.

Defendant argues, on the basis of these statements, that the district court failed to recognize its own discretion to depart from the sentencing guideline range, if it felt that justice so required. The government responds that the sentencing hearing transcript, when read as a whole, shows that the district court in fact recognized its discretion to depart from the guideline range, but decided that such departure was not called for in this case.

After reading the sentencing hearing transcript, we are unable to decide definitively between these differing assessments of the district court's view of its own discretion. The government's interpretation, that the district court was aware of its discretion to depart from the guideline range but declined to exercise it, seems plausible. Our usual presumption, moreover, is that a district court is aware of the law that it is called upon to apply. On the other hand, we recognize that the sentencing guidelines had only recently been introduced at the time of the hearing—July 1988—and that courts had had limited experience in their implementation. Indeed, the district court candidly noted, at the start of the hearing, "I may need a little guidance, as we go along, in light of the fact that we're using a guideline sentencing system here this morning." Thus, wishing to be absolutely fair to defendant, we cannot dismiss the possibility, remote though it may be, that the district court underestimated its own power, if so moved, to depart from the guideline range on the basis of Russell's arguably "aberrant behavior."

---

\* The district court apparently did consider the possibility of going below the guidelines *in recognition of Russell's cooperation with the government.* The court declined to take this step, noting that "I don't think it's the type of cooperation that I should take into account for an upward or a downward movement." Sentencing Hearing Transcript at 39.

In light of this ambiguity, we feel that the best course is for us to retain appellate jurisdiction and to ask the district court for clarification of its own decision-making process. This memorandum and order will be transmitted by the Clerk of this court to the district court, with the request that it inform us whether or not it recognized, at the time that it imposed sentence, that it had the discretion to make a downward departure from the guideline range. If the district court informs us that it was aware of its discretion, but declined to exercise it, our intention is to affirm the sentence. If the court informs us that it was not then fully apprised of its discretion to depart as found in the guidelines, our intention is to vacate the sentence and to remand for re-sentencing. In the latter event, the district court would be at liberty after reconsideration either to impose the same sentence or to alter it.

*The Clerk is instructed to transmit this order to the district court. We retain appellate jurisdiction.*

### ORDER AFTER DISTRICT COURT RESPONSE

In answer to our Memorandum and Order entered on March 14, 1989, the district court made the following response:

> In response to the request of the Court of Appeals for the First Circuit that this court inform the judges "whether or not it recognized, at the time that it imposed sentence that it had the discretion to make a downward departure from the guideline range", my answer is in the affirmative. I declined to exercise discretion, for the reason that I was of opinion that I *should* not go below the minimum set by the guidelines.

Accordingly, we affirm the defendant's sentence.

SO ORDERED.