UNITED STATES of America,
Plaintiff, Appellant,

v.

Terryl L. WILLIAMS,
Defendant, Appellee.

No. 89–1689.

United States Court of Appeals,
First Circuit.

Heard Nov. 9, 1989.

Decided Dec. 15, 1989.

S. Theodore Merritt, Asst. U.S. Atty., Washington, D.C., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for the U.S.

Martin D. Boudreau, with whom Boudreau, Burke, McMenimen & Barber, Boston, Mass., was on brief, for defendant, appellee.

Before BOWNES, VAN GRAAFEILAND * and SELYA, Circuit Judges.

SELYA, Circuit Judge.

This case can be viewed as the third component of a sentencing trilogy. In *United States v. Diaz–Villafane*, 874 F.2d 43, 49–52 (1st Cir.1989), we erected the framework for appellate review of departures from the guidelines promulgated pursuant to the Sentencing Reform Act of 1984, as amended, 18 U.S.C.A. §§ 3551–3586 (West 1985 & Supp.1988); 28 U.S.C.A. §§ 991–998 (West Supp.1988). There, we approved an upward departure as being consonant with the method of the guidelines: the sentence enhancement derived from "aggravating ... circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," 18 U.S.C. § 3553(b); and the direction and extent of the court's departure "was within the realm of reason." *Diaz–Villafane*, 874 F.2d at 52.

* Senior Circuit Judge, of the Second Circuit, sit-    ting by designation.

In *United States v. Aguilar–Pena,* 887 F.2d 347 (1st Cir.1989), we reiterated that each guideline should be seen "as carving out a 'heartland,' a set of typical cases embodying the conduct that [the] guideline describes," *id.* at 349 (quoting United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.) Ch. 1, Part A, Introduction 4(b), (Nov. 1989)). Thus, "[i]t is only when the case before the court falls outside the 'heartland' that departure comes into play." *Id.* Because Aguilar–Pena's case landed "well within the heartland," *id.* at 353, we vacated the district court's imposition of a sentence above the indicated guideline range.

In the case at bar, we come full circle. We deal not with an accused's claim that the district court made an impermissible upward departure from the guidelines, but rather, with the government's claim that the court made an impermissible downward departure. Once again, we find the case well within the heartland for the crime of conviction. Believing that downward departures are circumscribed by the same constraints as upward departures—what is sauce for the accused's goose is, equally, sauce for the government's gander—we declare the sentence unlawful.

## I. BACKGROUND

During a three week period in 1988, defendant-appellee Terryl L. Williams, unarmed, attempted a string of bank robberies. Most were marginally successful. When all was said and done, Williams netted (1) a total of approximately $16,500, and (2) a multicount indictment charging numerous violations of 18 U.S.C. § 2113(a). He pled guilty to eight counts (representing six unarmed bank robberies and two failed attempts). The plea agreement stipulated that the government would not urge an upward departure.

The parties do not dispute that the applicable sentencing range was 41–51 months.[1] *See generally Diaz–Villafane,* 874 F.2d at 47–48 (explaining method for computing sentencing range under the guidelines). The presentence investigation report cited no grounds for departure. At the sentencing hearing, the government recommended a sentence in the high end of the guideline range and defense counsel recommended that the lower third of the range be visited. The judge rejected these suggestions and departed downward, sentencing Williams to a prison term of 36 months. In its bench decision, the court explained:

> I'm doing it because he had no prior record. He did it over a very brief period of time when he was suffering from cocaine addiction. He was a very ineffective robber. He was only half-hearted at it. He didn't use any gun, and I think he's indicated a desire to change his life.[2]

## II. DEPARTURE FROM THE GUIDELINES

In enacting sentencing reform, Congress sought to achieve three primary sentencing goals: honesty, uniformity, and proportionality. *See* 28 U.S.C.A. § 991(b)(1)(B) (West Supp.1988); U.S.S.G. Ch. 1, Part A, Introduction 3. In striving for honesty, Congress sought to restore public confidence by adoption of "real time" sentencing. U.S.S.G. Ch. 1, Part A, Introduction 3. In striving for uniformity, Congress sought to "narrow[ ] the wide disparity in sentences imposed by different federal courts for similar conduct by similar offenders." *Id.* In striving for propor-

---

**1.** Pursuant to section 3D1.2(d) of the guidelines, the court treated each bank robbery separately, assigning an offense level score of 19 to each. The court then made a multiple count adjustment under section 3D1.4 in order to determine the overall base offense level (24) encompassing the eight counts of conviction. The offense level was then decreased by two points because Williams accepted responsibility for his acts. Factoring in Williams' criminal history category (I), and utilizing the grid, the sentencing range was 41–51 months.

**2.** In a subsequently-issued written memorandum, the judge reformulated these reasons to some extent, listing five factors: the offenses were "committed over a brief period of time," and "under the influence of drugs;" they involved a "[r]elatively insignificant amount of money;" Williams had "no prior criminal record" and received good reports concerning his "attitude while in prison." We give the district court the benefit of the doubt and consider all of the court's reasons, oral and written, as comprising the grounds for departure.

tionality, Congress sought to establish "a system that imposes appropriately different sentences for criminal conduct of different severity." *Id.* In turn, the Sentencing Commission attempted to further Congress's aims. It follows inexorably that, to implement the guidelines properly, courts must bear these goals in mind. Among other things, courts must remember the importance which Congress, and the Commission, attached to ensuring that like situations are treated alike.

■ To this end, only cases outside the "heartland" for the crime of conviction warrant departure. As Congress ordained, a district court may depart from the guidelines if it "finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described," 18 U.S.C.A. § 3553(b)—and not otherwise. In the throws of monumental change from a largely discretionary system of criminal sentencing to a more structured regimen, we, and other courts, have striven to mirror the discernible legislative will. *See, e.g., United States v. Michel,* 876 F.2d 784, 786 (9th Cir.1989); *Diaz–Villafane,* 874 F.2d at 49; *United States v. Russell,* 870 F.2d 18, 19 (1st Cir.1989) (per curiam). That will demands judicial restraint. As we recently stated: "Giving judges free rein to forsake the guidelines in cases falling within the heartland for a given offense would be tantamount to judicial repudiation of the Sentencing Reform Act and the important policies which propelled its enactment." *Aguilar–Pena,* at 351–52.

It is for these reasons that departures—whatever direction they may take[3]—should only be "permitted in those cases where idiosyncratic circumstances warrant individualization of sentence beyond that which is possible within the comparatively close-hewn parameters constructed by the guidelines." *Id.* at 350. Put bluntly, "there must be something 'special' about a given offender, or the accoutrements of the crime

committed, which distinguishes the case from the mine-run for that offense." *Id.* It is not until "a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, [that] the court may consider whether a departure is warranted." U.S.S.G. Ch. 1, Part A, Introduction 4(b). Whether departure is appropriate, then, depends in large part upon what circumstances the Sentencing Commission took into account in framing the guidelines. *See Aguilar–Pena,* at 350; *United States v. Uca,* 867 F.2d 783, 786 (3d Cir.1989). As the Commission wrote, "[w]here the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a [particular] factor ..., departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction." U.S.S.G. § 5K2.0, p.s.

### III. THE MERITS

■ Having limned the contours of our inquiry, we now visit the particulars of the question before us. We are mindful that, in ascertaining the legitimacy of departures from the guidelines, a tripartite analysis is utilized. *See Aguilar–Pena,* at 350; *Diaz–Villafane,* 874 F.2d at 49. The first rung on the analytic ladder requires an evaluation of the circumstances relied on below in determining the case to be sufficiently "unusual" to warrant departure. *Aguilar–Pena,* at 350. That question is one of law; ergo, our review is plenary. *See Diaz–Villafane,* 874 F.2d at 49.

In this case, we need not progress past the initial step. The district court's departure recipe consists largely of ingredients used by the Sentencing Commission in preparing the guidelines (and thus, not suitable grist for the departure mill). To the extent that the court relied upon other circumstances, they simply cannot support the weight of a departure. Accordingly, the sentence must be vacated.

---

**3.** We believe that the standards for gauging the appropriateness of departure apply equally to upward and downward departures, and we so rule.

### A. *Circumstances Already Considered.*

In the first category, we place such items as Williams' drug addiction, eschewal of firearms, ineffectiveness as a bank robber, modest criminal record, and desire to repent. None of these circumstances are present in this case in any extraordinary degree. Thus, we address them only insofar as is necessary to show that the Sentencing Commission considered them in promulgating the guidelines.

1. *Cocaine Dependency.* Congress directed that the Commission take drug addiction into account in drafting the guidelines, *see* 28 U.S.C. § 994(d)(5), and the Commission did so, stipulating that "[d]rug dependence or alcohol abuse is not a reason for imposing a sentence below the guidelines." U.S.S.G. § 5H1.4, p.s.; *see also* U.S.S.G. § 5K2.13, p.s. (validating departures for non-violent offenses based upon diminished capacity "not resulting from the voluntary use of drugs or other intoxicants").[4]

2. *Lack of Weaponry.* It cannot be gainsaid that the Commission evaluated the effect of carrying a gun during the commission of a crime. With respect to robbery, the guidelines mandate an increase in the base offense level when a firearm is discharged, used, brandished, displayed, or possessed. *See* U.S.S.G. § 2B3.1. Inasmuch as the base offense level itself depends, in part, upon whether the robber was unarmed, the presence or absence of a weapon has been taken into account. The fact that Williams did not use a gun, then, could be given no weight in the judge's departure decision.

3. *Ineffectiveness.* The district court based its downward departure partially on its conclusion that Williams was an "ineffective" thief who garnered only a "relatively insignificant amount of money" during the robberies. But, the Commission has adequately accounted for failed attempts vis-a-vis bank robbery. The statute of conviction, 18 U.S.C. § 2113(a), embraces both actual and attempted bank robberies; and the base offense level for the crime already includes failed attempts. Moreover, the guidelines contain an express provision for sentence reduction anent incomplete offenses, applicable only where the offense in question is not covered by a specific guideline. *See* U.S.S.G. § 2X1.1. Since guideline section 2B3.1(a), governing robbery, incorporates attempted robbery within its ambit, we are constrained toward two conclusions: (1) section 2X1.1 does not apply in Williams' case,[5] and (2) the Commission considered and rejected failure as a basis for departure except in precisely described circumstances (not applicable here). *See United States v. Toles*, 867 F.2d 222, 223 (5th Cir.1989). The simple fact that Williams was not as successful a robber as he might have hoped did not warrant a downward departure.

4. *Minimal Prior Record.* Williams possessed a prior criminal record of no great consequence. He had two previous convictions, only one of which could be counted against him in calculating his sentence. In any event, Williams was placed in Category I, a classification reserved for first time or infrequent offenders. In other words, although Williams had a criminal record, he was treated under the guidelines in the same manner as one who had never

---

**4.** This case does not present a suitable occasion for us to pass upon the dicta in *United States v. Taylor*, 868 F.2d 125 (5th Cir.1989), indicating that the Commission intended that drug abuse should not "ordinarily" influence sentencing decisions—but that dependency might warrant departure in the rare case. *Id.* at 127. Whatever might be the merits or demerits of this view, there is nothing sufficiently unusual about Williams' case to warrant a departure predicated on drug addiction.

**5.** We note in passing that, even if section 2X1.1 applied, Williams would not be entitled to a

sentence reduction on that account. The guidelines specifically direct that no decrease shall be made for an attempt if "the defendant completed all the acts the defendant believed necessary for successful completion of the offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." U.S.S.G. § 2X1.1; *see also United States v. Toles*, 867 F.2d 222, 223 (5th Cir.1989). Appellee's situation came well within this encincture.

been cited for a crime. A defendant's past criminality has been carefully incorporated into guideline sentencing by the use of "criminal history categories." The district court was not at liberty, on this record, to double count by granting further clemency predicated upon Williams' history. Indeed, the guidelines specifically warn that "a departure below the lower limit of the guideline range for a Category I criminal history cannot be appropriate." U.S.S.G. § 4A1.3, p.s.; *see also United States v. Paulino*, 873 F.2d 23, 25 (2d Cir.1989) (downward departure not warranted for absence or insubstantiality of criminal record); *United States v. Bolden*, 889 F.2d 1336 (4th Cir. 1989) (similar).

5. *Desire to Reform.* The district court was obviously impressed by defendant's expressed desire to change his life. Yet, this circumstance was already adequately taken into account in constructing the guidelines. The Sentencing Commission acknowledged that "a defendant who clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense … is appropriately given a lesser sentence than a defendant who has not demonstrated sincere remores." U.S.S.G. § 3E1.1, comment. (backg'd). Williams received credit where credit was due; in calculating his sentence, the district court ceded a two level reduction in the offense level, as required. *See* U.S.S.G. § 3E1.1. The defendant was not entitled to any additional benefit on this score.

6. *Time Span.* The district court noted that appellee's crime wave occurred within a tightly compressed period (nine attempted robberies in a span of approximately three weeks). The judge thought this to be a mitigating circumstance. We believe, however, that such temporal brevity is outlawed from the departure calculus by the Commission's treatment of multiple offenses. If is evident that the Commission intended to prevent multiple punishment for substantially identical offense conduct by grouping certain offenses together. "Convictions on multiple counts do not re-

sult in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines." U.S.S.G. Ch. 3, Pt. D, intro. comment. Consequently, guidelines relating to offenses concerning, say, drugs or fraud, contain provisions that deal with repetitive or ongoing behavior. *See id.* There are no comparable provisions vis-a-vis robberies; indeed, the Commission specifically stipulated that robbery was to be regarded as a crime oriented toward single episodes of criminal behavior, *see id.*, and therefore not to be treated as a continuing offense. At least in a case like this one—where the robbery attempts occurred on different days [6] and at different places—we can only conclude that the Commission rejected the idea that the span of time during which multiple robberies were committed could be accorded weight for sentencing purposes.

### B. *What Remains.*

Draining the impermissible ingredients from the stew leaves precious little in the departure pot. To be sure, the district court also alluded to the fact that defendant had comported himself admirably while in prison—a circumstance which was apparently not considered in formulating the guidelines. We know of no reason why such a circumstance could not be examined in the departure calculus. *See* U.S.S.G. § 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."). Moreover, it can be argued that the court's reference to Williams as a "half-hearted" robber—while likely relating to appellee's ineffectuality, and thus already considered, *see supra* Part III(A)(3) —referred to some atypical lack of enthusiasm not accounted for in mapping the heartland of the offense of conviction. But, to the extent that these circumstances were properly considered at all, they were clearly insufficient, singly or in combina-

---

6. On December 7, 1988, both a successful robbery and a failed attempt took place—but these incidents occurred at separate banks in separate cities.

tion, to swing open the gate to a downward departure.

We explain briefly. A key premise of the guidelines, responding to Congress's perceived desire for reasonable uniformity in sentencing, is that similar conduct of similar offenders should be accorded similar treatment. *See* 28 U.S.C.A. § 991(b)(1)(B); *see also* U.S.S.G. Ch. 1, Part A, Introduction 3. So long as we are unready to consign "the oft-stated importance of eliminating disparity in sentencing," *Aguilar–Pena*, at 351–52, to the scrap heap, then departures must be bottomed on *meaningful* atypicality; in other words, the circumstances triggering a departure must be truly "unusual." *Id.* at 350. Certainly, judges can always flyspeck individual cases to find some sort of idiosyncracy. We wish to make it clear, however, that not every blip on the screen can justify repudiation of the guidelines. If the guidelines are to provide a coherent system of criminal sentencing, the trial court's right to depart, up or down, must be restricted to those few instances where some substantial atypicality can be demonstrated.

## IV. CONCLUSION

We need go no further. In altering the dynamics of criminal sentencing so dramatically, Congress has significantly altered the legal landscape. This requires a new and different approach to sentencing. If the federal courts are to meet their responsibility, they must vigilantly police the perimeters of the guidelines to ensure that departures remain "the exception, not the rule." *Aguilar–Pena*, at 350; *see also Diaz–Villafane*, 874 F.2d at 52. Whatever direction they may take, departures can be condoned only where the circumstances pertaining to the offense or the offender are sufficiently unusual to remove a case from the heartland. Finding, as we do, that the circumstances relied upon by the district court in this instance were legally inadequate to warrant a downward departure, the government's appeal must be sustained. Williams' sentence is, therefore, vacated and the cause remanded for resen-

tencing within the applicable guideline range.

*Vacated and remanded.*