**UNITED STATES, Appellant,**

v.

**Susan POZZY, Appellee.**

**No. 89–1879.**

United States Court of Appeals, First Circuit.

Heard March 6, 1990.

Decided April 30, 1990.

**134**

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., James L. McCarthy, Asst. U.S. Atty., Detroit, Mich., and F. Mark Terison, Asst. U.S. Atty., Portland, Me., were on brief, for appellant.

J. Hilary Billings, Bangor, Me., for appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

This is an appeal by the government pursuant to 18 U.S.C. § 3742(b)[1] from a sentence that departed downward from the applicable guideline range.

I.

A. *The Sentence*

The defendant Susan Pozzy and her husband Peter Pozzy were charged in separate informations with possessing cocaine on November 10 with intent to distribute it and aiding and abetting the other do the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Both Susan and her husband Peter waived indictment and pled guilty to the information charges.

We are reviewing only the sentence of Susan Pozzy, but because both she and her husband pled guilty to the same offenses and were sentenced by the same judge on the same day and because the marital relationship was an important factor in defen-

1. 18 U.S.C. § 3742(b) provides:

**(b) Appeal by the Government.**—The Government, with the personal approval of the Attorney General or Solicitor General, may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser fine or term of imprisonment, probation, or supervised release than the minimum established in the guideline range, or includes a less limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the minimum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

dant's sentence, we think that Peter Pozzy's sentence is necessary background information.

In sentencing defendant's husband, the district court relied on the presentence investigation report and properly calculated the applicable guideline sentencing range. Peter Pozzy was sentenced to imprisonment for a period of forty-five months to be followed by three years of supervised release. The mandated fifty dollar assessment was imposed.

In sentencing defendant, the district court departed downward from the guideline range he found applicable, fifteen to twenty-one months imprisonment, and sentenced her to house arrest for a period of three months, followed by a supervised release term of two years. A fifty dollar special assessment was imposed, as required by the statute.

## B. *The PSI*

We turn first to the presentence investigation report (PSI) prepared by the probation department. The PSI reported that defendant and her husband had been engaged in cocaine trafficking for at least three months prior to their arrest. According to information obtained by the Bureau of Intergovernmental Drug Enforcement from an informant, the Pozzys received eight packages containing cocaine over a period of approximately three months. The packages came from Hollywood, Florida and were delivered to the Pozzys in Maine by United Parcel Service (UPS). Special Agent McKinney of the Bureau learned that on November 10, 1988, another package was to be delivered by UPS to the home of Mr. and Mrs. Pozzy. The UPS truck was intercepted at the post office parking lot in Winterport, Maine, and the package addressed to the Pozzys was sniffed by a narcotics dog. The dog signaled the presence of drugs and the package was seized. It had been sent from Fort Lauderdale, Florida, which is adjacent to Hollywood.

After obtaining a warrant to search the package, it was opened. Secreted in the package were two separate ziplock plastic bags, each containing 30 grams of white powder. After it was determined that the white powder was cocaine, the ziplock bags with their original contents were put back in the UPS package. A search warrant for the Pozzy's home was obtained. UPS then made a "controlled delivery" of the package to the Pozzy's residence. The warrant was executed immediately after the package was signed for and accepted by Peter Pozzy. The two ziplock bags of cocaine were seized from a garbage can next to the kitchen table. Also seized were three rounds of .30 caliber ammunition, $900 in cash, and a number of items with a white powder residue, including a sifter and a triple beam scale. The white powder residue was analyzed and found to be cocaine. Eighteen and a half grams of marijuana were also seized.

Defendant told the probation investigator that she became a drug trafficker in order to buy things and pay her bills. She described the affair as "a living nightmare." She told the probation officer that she was sorry for what she had done. She stated that her life was ruined and she was frightened, not knowing what was going to happen to her, her husband and their home. Defendant indicated to the probation officer that "she deserved to lose it all." She also told the probation officer that she had nothing to do with her husband's drug business beyond enjoying the financial benefits of it. Her husband corroborated this.

Defendant had no prior criminal history. She was brought up in an upper-middle class family. She told the probation officer that her father physically abused his wife and children. One of defendant's brothers had been sentenced to a Miami prison for drug trafficking. Defendant started "snorting" cocaine when she was in high school in Boca Raton, Florida. Defendant said that she stopped using cocaine in the summer of 1988.

Defendant has no mental or emotional health problems; she has an I.Q. of 104, which is average. Her physical health is described in the PSI as "excellent." In December of 1988, after her arrest, defendant suffered a miscarriage; she was three

and one-half months pregnant. At the time of sentencing, August 8, 1989, defendant was pregnant again with an expected delivery date of December 13, 1989.

## C. *The Sentencing Proceedings*

We next track the reasons stated by the district court for arriving at the sentence it did. The sentencing judge started by noting that "the sentencing guidelines are a new animal ... that we're trying to apply as the Sentencing Commission intended in order to impose sentences that are uniform and impose sentences that do speak for the guidelines." After thanking both attorneys for their comments, the judge stated:

> I made a decision long ago that if I was going to err in sentencing defendants, that I was going to err on the side of leniency. It may be that such an error or such errors will cause my actions to be questioned by higher courts. But, in the meantime, I won't have any difficulty sleeping at night.

This comment was followed by this statement:

> I think that the circumstances in this case warrant a departure downward. I don't think that there's any way that I can look at a specific provision of the guidelines and apply it to this situation. If that were the case, in all probability there would not be any departure downward. I think that *we must look at the totality of the circumstances,* and I will attempt to explain how I've done that and what has caused me to reach the decision to depart downward.

(Emphasis added).

After observing correctly that § 5K2.0 of the guidelines gives the general directions for a downward departure from the applicable guideline range, the judge said: "The circumstances in this case that I think warrant a departure downward have to do primarily with the defendant's relationship with her husband, and, to some extent, with her present physical condition."

The judge then acknowledged that there was a "strong likelihood" that § 5H1.4 "prohibits me from taking into consideration defendant's pregnancy." [2] He went on to say: "But I can't, in all honesty, say that the pregnancy of this defendant is not a consideration in departing downward; because it is." The judge explained:

> Any departure downward that I give to this lady because of her pregnancy is not given because of her. It's given because of the child. It's not given because she has a physical disability. It's given because she has a child. And I think that [sic] child's rights should be given some consideration.

The judge then stated that from a medical standpoint it could be assumed that defendant "will receive the same care and comfort in jail as she would receive at home. Maybe better, in some instances." He, however, felt that from "a psychological standpoint" defendant's health and that of her child would be "more threatened in confinement than it would be in a home setting." The judge expressed concern that the child would bear a stigma for the rest of its life if it were born in prison. He stated that he did not think the Sentencing Commission had considered pregnancy and that it was "an aggravating or mitigating circumstance that should be taken into consideration."

The judge next considered the relationship between the defendant and her husband. He acknowledged that "5K2.12 defines duress and the extent to which it can be considered in a case." This was followed by this statement: "But I don't think that it defines the type [sic] duress that exists between a man and a woman who are married, when the man wants to commit a crime, he has a drug habit, he has a history of alcoholism, he has a desire to buy and sell drugs." The judge then went on to find that the wife

> has no alternative but to stay or leave and the former requires her to be an

---

**2.** The pertinent part of § 5H1.4 states: "Physical condition is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guidelines a sentence should fall. However, an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment."

accomplice and an aider and abettor. I think that's a factor that's important.

\* \* \* \* \* \*

I think the conclusion is inescapable that she got into this matter because she loved her husband and because he had a drug habit, and he wanted her to do it, and she really had no alternative but to leave or stay there and participate. I think that's a factor that the Sentencing Commission did not take into consideration and one that is appropriate for me to consider in deciding the question of the departure downward.

Another factor that the judge considered as requiring a downward departure was that defendant was being punished by her husband's sentence. He stated: "I think that that's something that the Sentencing Commission did not consider and something that I'm compelled to consider in determining whether or not a departure downward should be made." Prior to making this finding, the judge had stated that defendant's husband would not be given leniency because of family ties. He referred to § 5H1.6 in discussing family ties, the first sentence of which states: "Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines."

The judge found defendant's offense level to be 14 with a sentencing range of 15 to 21 months. He made a four-level reduction because of defendant's pregnancy. Another four-level decrease was made because of "the fact that she was involved in it because of her relationship with her husband...." And, "the fact that any punishment meted out to the defendant, Mr. Pozzy, will have an effect on this defendant" was the basis for a further four-level decrease.

The judge then discussed another matter that he felt warranted an additional decrease in the sentence: the lack of a halfway house near defendant's home. After noting that the closest halfway house was in Massachusetts, the judge stated:

To confine her there would require her to nurture this pregnancy and to have this baby outside of her home, away from her family, and in an environment that I think would be detrimental to her physically, psychologically, and that the same would impact, or could very well impact, on her child.

Because of the fact that I cannot put her in a halfway house and let her receive the benefits of that halfway house, I think that she's entitled to an additional reduction of her offense level.

The judge found that the unavailability of a halfway house in Maine near defendant's home justified "a reduction of six levels in her offense."

Defendant was then sentenced to be placed on house arrest for a period of three months followed by a supervised release term of two years. This appeal by the government followed.

## II.

Although the guidelines are of recent origin, we already have in this circuit a body of coherent case law dealing with guideline departures. *United States v. Russell*, 870 F.2d 18 (1st Cir.1989), concerned the driver of a Wells Fargo armored truck who had no criminal record. During a bank pickup, Russell's partner had been mistakenly given an extra money bag containing $80,000. Russell and his partner decided to keep the money. A week later their consciences forced them to admit what they had done. Russell returned all the money and fully cooperated with the authorities. His attorney argued to the district court that this single episode of "aberrant behavior" justified a downward departure from the applicable sentencing guideline. The district court refused to do so, and it was not clear to us whether it was aware that it had the power to depart downward from the guidelines. We remanded so the district court could inform us of the reason for its refusal to depart downward from the guidelines. During the course of our opinion, we stated: "The Sentencing Commission made clear that departures are permitted in atypical cases, at the sentencing judge's discretion." *Id.* at

20. We held that "aberrant behavior" may involve factors not adequately taken into consideration by the sentencing commission. *Id.*[3] The case before us obviously does not involve the type of "aberrant behavior" that was the focus of *Russell.*

In *United States v. Diaz–Villafane,* 874 F.2d 43 (1st Cir.1989), we set forth in some detail the principles and rules that should be applied by a reviewing court to guideline departures. Although *Diaz–Villafane* concerned an upward departure, the factors to be considered apply with equal force to downward departures. We pointed out that the Sentencing Commission intended sentencing judges to consider each guideline as carving out a set of typical cases (a "heartland") embodying the conduct that the guideline being applied describes. We quoted from the Guidelines Manual to the effect that consideration of departure is triggered by an atypical case. *Manual,* Ch. 1, Part A, Introduction 4(b) at 1.6–1.7. We held that the process of reviewing guidelines comprised three steps:

First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departures is, we think, a question of law.

Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error. *See* 18 U.S.C. § 3742(d).

Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness.

*Diaz–Villafane,* 874 F.2d at 49. *See also United States v. Delloiacono,* 900 F.2d 481 (1st Cir.1990); *United States v. Chase,* 894 F.2d 488, 490–92 (1st Cir.1990).

■ In this case, we need go no further than the first step. Having made a plenary review of the factors that induced the sentencing judge to depart downward from the applicable sentencing guideline, we find as a matter of law that none of the reasons given for the departure—pregnancy, marital relationship, the effect of her husband's punishment on the defendant, and the lack of a halfway house in Maine—justified a downward departure from the sentencing guidelines. Nor do we approve a "totality of the circumstances" approach to sentencing under the guidelines. The guidelines were written as specifically as possible considering the inherently complex and difficult subject with which they deal. They must be applied on a factor-by-factor basis. *See United States v. Aguilar–Pena,* 887 F.2d 347, 353 (1st Cir.1989). To condone a "totality of the circumstances" approach would allow a judge, as here, to nullify the guidelines approach to sentencing.

Even were we to ignore the tri-partite review process established in *Diaz–Villafane* and confine our review to determining the reasonableness of the departure, we would find that the departure here was unreasonable as a matter of law.[4]

We explain why the factors on which the sentencing judge relied were not legally justified as a basis for departure. Before doing so, we think it important to stress that § 5H1.10 of the guidelines states that sex is "not relevant in the determination of a sentence."

Pregnancy

■ Although defendant's child has now been born, the issue of pregnancy is not moot. The pregnancy of convicted female

---

**3.** After remand, the district court informed us that he declined to depart downward from the guidelines "for the reason that I was of the opinion that I *should* not go below the minimum set by the guidelines."

**4.** In the introduction to the Manual, Part A 1.1 the Commission states: "If the judge departs from the guidelines range, an appellate court may review the reasonableness of the departure."

felons is neither atypical nor unusual. It is something that the Bureau of Prisons has had experience in handling.

It is true, as the sentencing judge stated, that pregnancy is not mentioned in the guideline concerning physical condition, § 5H1.4. But we hardly think that is because the Commission did not think of it. Under the guideline, "only an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment." We think the Commission was fully aware that some convicted female felons are pregnant at the time of sentencing. If it had thought pregnancy was a sentencing factor to be considered, the Commission would have said so.

We agree with the sentencing judge that a child will bear a stigma from being born in prison. But it has been recognized since time immemorial that the sins of parents are visited upon their children. Moreover, the stigma could have been avoided, or at least mitigated, if the judge had postponed defendant's commitment until after the child was born, as he had the power to do. In this connection, the government has represented that defendant's sister, the mother of two children, had volunteered to look after the child until defendant had completed her prison term. It must also be noted that defendant became pregnant after she and her husband were arrested and charged with drug trafficking. We agree with the last paragraph of the PSI, which stated: "This office believes that to allow a departure downward for pregnancy could set a precedent that would have dangerous consequences in the future, sending an obvious message to all female defendants that pregnancy is 'a way out.'"

Although we will not go so far as to hold that pregnancy can never be a factor to be considered in departing downward from the guidelines, the sentencing judge erred in using it in this case.

### The Marital Relationship

■ There is nothing in the record to suggest that defendant was physically coerced by her husband into taking an active role in his cocaine business, or that she did so because of threats of physical violence. That is all the guideline on coercion and duress, § 5K2.12, can reasonably be interpreted to cover: "*Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury*, substantial danger to property or similar injury resulting from the unlawful action of a third party or from a natural emergency." (Emphasis added).

It is not atypical for husbands and wives to commit crimes together. It seems clear from defendant's own statements that the reason she and her husband were drug traffickers is the same reason motivating most of those in the drug trade—money. We can not overlook the fact that defendant started using cocaine in high school. There is nothing in the record suggesting that defendant's husband led her against her will into a life of crime. We find no basis in the existence of a marital relationship for a downward departure.[5]

### Effect on Defendant of Husband's Imprisonment

■ This deserves but scant discussion. It is directly contrary to the guidelines statement that "family ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the guidelines." § 5H1.6. The guidelines reflect the prevailing law on this subject. *See United States v. DeCologero*, 821 F.2d 39, 43–44 (1st Cir.1987). There was no reasonable basis for using this factor for a downward departure. We do not think that a wife's sentence should be reduced because of the sentence received by her husband. Where both spouses have confessed guilt to the same crimes, each spouse's sentence must stand alone and be based on the applicable guidelines.

### Lack of a Halfway House in Maine

■ We can find no indication that the Commission presumed that halfway houses would always be available for sentencing

---

5. The facts would support a downward adjustment of two levels on the basis that defendant was a minor participant. *See* § 3B1.2(b). The district court made this adjustment in reaching the offense level of 14 and the government has not challenged the adjustment.

appropriate offenders. Therefore, the absence of a halfway house should not constitute the kind of unusual circumstance that should warrant departure.

Moreover, a sentencing judge may only order a defendant confined to a halfway house [6] when the minimum term of imprisonment authorized by the guidelines is less than ten months. *See* § 5C1.1(f). Because we find that the other departures granted by the district court were inappropriate, the existence of a halfway house was irrelevant to the district court's sentence. At the offense level of 14, the guidelines mandate a sentence of fifteen to twenty-one months. Consideration of the availability of a halfway house was clearly inappropriate.

Although judicial compassion is important in sentencing, it cannot be condoned when it results, as in this case, in individual sentencing contrary to the intent and command of the guidelines. Sentencing is no longer the exclusive domain of the district judge. We have embarked on a new course. *See United States v. Williams,* 891 F.2d 962, 967 (1st Cir.1989). Only time will tell whether the use of the guidelines will result in an improvement over the old system. But unless we follow both the spirit and written directions of the guidelines, we will never know if they have been given a fair test. They at least deserve that.

The sentence of Susan Pozzy is vacated and the case remanded for resentencing within the applicable guideline range.

*Vacated and Remanded.*

---

**6.** Under § 5C1.1(e)(2) community confinement includes residence in a halfway house.