**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Leonard Anthony DALECKE,**
**Defendant–Appellee.**

No. 93–2228.

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted Jan. 28, 1994.

Decided July 18, 1994.

Jeanine LaVille, Asst. U.S. Atty. (briefed and argued), Grand Rapids, MI, for U.S.

Fred Dilley (briefed), Andrea D. Lundy, Boyden, Waddell & Timmons, Grand Rapids, MI, for Leonard Dalecke.

Before: KEITH, RYAN, and DAUGHTREY, Circuit Judges.

RYAN, Circuit Judge, delivered the opinion of the court, in which DAUGHTREY, Circuit Judge, joined. KEITH, Circuit Judge (pp. 11–12), delivered a separate concurring opinion.

RYAN, Circuit Judge.

The plaintiff, the United States of America, appeals the district court's decision to depart downward from the federal sentencing guidelines in sentencing the defendant, Leonard Anthony Dalecke. This appeal presents the question of whether the district court improperly based its departure on factors taken into account by the guidelines themselves. We conclude that the district court erred in granting the departure because the factors on which it relied all were adequately contemplated by the guidelines. Accordingly, we vacate the district court's sentencing order, and remand the case for resentencing.

**I.**

On December 1, 1991, the defendant was arrested by the Kentwood, Michigan, police department, and charged with felonious assault on his live-in girlfriend, Heather Hyde. Following the defendant's release on bond, Hyde informed the local authorities that the defendant kept a sawed-off shotgun in the bedroom of the home they had shared. She told the authorities that she was reporting the weapon out of fear. She also told the police that the defendant conducted gambling activities through the restaurant/bar he owned.

Kentwood police subsequently took possession of the firearm reported by Hyde, and identified it as a .20 gauge shotgun with a barrel length measuring 12⅛ inches, and an overall length totaling 20⅝ inches. The authorities confirmed the firearm was fully functional. A follow-up investigation revealed that, although the defendant had owned the gun for some fifteen years, he had never registered it. The defendant had duly registered other weapons he owned, however, including at least two shotguns, two rifles, and four pistols.

The defendant was indicted by a federal grand jury for possession of a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). At trial, the defendant testified that he purchased the illegal weapon from one of his bar patrons, and that he had done nothing to alter it. He further testified that for approximately three years, he carried the gun with him to his business establishment for protection. In 1983, after obtaining a concealed weapons permit, the defendant began carrying a pistol to work for protection, and relegated the sawed-off shotgun to home protective use.

Following the defendant's conviction by a jury, he moved the district court for a downward departure in sentencing, arguing that his offense constituted a single act of "aberrant behavior." In evaluating whether to grant the motion, the district court noted at sentencing that the defendant's situation presented several atypical characteristics.

As an initial matter, the district court noted that the defendant did not "actively seek" the weapon. In addition, the court found it significant that the defendant did not, himself, alter the shotgun, and did not use the gun to commit criminal offenses. Finally, the court identified as "most important" the means by which the shotgun was discovered:

The record indicates that the defendant was involved in a domestic dispute with his girl friend and the mother of his son. This assault has led not only to punishment for that assault, which is clearly appropriate, but also to this gun charge and to state prosecution for possession of trace amounts of marijuana and a small amount of cocaine. The court has searched the record in this case and the presentence report in vain in an effort to determine what it is that is concerning this defendant that justifies this expenditure of scarce government resources. While the crimes

which the defendant has been charged are all technically separate offenses, the court believes that they must be considered together to achieve a just and fair sentence. The court noted that none of these individual factors standing alone warranted a downward departure. However, by aggregating the factors into a single mitigating circumstance, the court justified a five-level downward departure. As a result, instead of sentencing the defendant within the 21- to 27-month sentence range required by the guidelines, the district court sentenced him to nine months' confinement in a community alternatives program, followed by home detention. The government appealed.

## II.

▇ The prosecution argues that the district court erred because it based its departure solely on factors already taken into account by the federal sentencing guidelines. In addition, the prosecution claims that it was improper for the district court to aggregate the factors into a single mitigating circumstance in order to justify the departure.

In contrast, the defendant, relying on an unpublished decision, argues that this court has shown a willingness to permit sentencing courts to aggregate factors that may not, each on its own, be adequate to warrant a departure. In addition, the defendant contends that he has been the victim of unjustified prosecutorial zeal, and that such conduct alone is an atypical circumstance warranting the departure.

We apply a three-step analysis to a sentencing court's decision to depart from the federal sentencing guidelines:

First, the reviewing court determines whether "the case is sufficiently 'unusual' to warrant departure." ... This is purely a question of law....

"Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error." ...

"Third, once we have assured ourselves that the sentencing court consid-

ered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness."

*United States v. Brewer*, 899 F.2d 503, 506 (6th Cir.), *cert. denied*, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990) (citations omitted).

The discretion of the district court to depart downward from a sentence prescribed by the federal sentencing guidelines is restricted by statute:

The court shall impose a sentence of the kind, and within the range [set forth in the sentencing guidelines] ... unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b). The guidelines provide that departure may be warranted, either because the guidelines did not take into account a mitigating or aggravating factor at all, or because, "in light of unusual circumstances, the guideline level," though appropriate in the majority of cases, would be "inadequate" in this particular instance. U.S.S.G. § 5K2.0.

We have held that the above considerations mandate strict adherence to the guidelines whenever the guidelines have taken a factor into account "unless rare and exceptional circumstances warrant departure." *Brewer*, 899 F.2d at 506. In determining whether such unusual circumstances exist, the district court must remember that Congress, in creating the Sentencing Commission, was striving for "(1) honesty, (2) uniformity, and (3) proportionality" in sentencing. *Id.* at 507. It is unlikely that a circumstance identified by the guidelines can serve as a basis for departure, because the district court "should not treat [such factors] as unique or unusual." *Id.* at 511.

Section 3553(b)'s reference, in the singular, to an "aggravating or mitigating circumstance" has been the subject of some controversy. Three circuits have held that circum-

stances—at least, typical circumstances—cannot be aggregated to create a single atypical circumstance warranting departure. *United States v. Mogel*, 956 F.2d 1555, 1566 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992); *United States v. Pozzy*, 902 F.2d 133, 138 (1st Cir.), *cert. denied*, 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990); *United States v. Rosen*, 896 F.2d 789, 792 (3d Cir.1990). As the First Circuit explained:

> Nor do we approve a "totality of the circumstances" approach to sentencing under the guidelines. The guidelines were written as specifically as possible considering the inherently complex and difficult subject with which they deal. They must be applied on a factor-by-factor basis.... To condone a "totality of the circumstances" approach would allow a judge, as here, to nullify the guidelines approach to sentencing.

*Pozzy*, 902 F.2d at 138 (citation omitted). The Fourth Circuit has indicated some willingness to follow this approach as well. *See United States v. Goff*, 907 F.2d 1441, 1447 (4th Cir.1990).

On the other hand, the Ninth Circuit has favored a totality of the circumstances approach to section 3553(b):

> The statute speaks in the singular of "mitigating circumstance," 18 U.S.C. § 3553(b). There is no reason to be so literal-minded as to hold that a combination of factors cannot together constitute a "mitigating circumstance." Given the Sentencing Commission's acknowledgement of "the vast range of human conduct" not encompassed by the Guidelines, a unique combination of factors may constitute the "circumstance" that mitigates.

*United States v. Cook*, 938 F.2d 149, 153 (9th Cir.1991). As the court subsequently clarified, the totality of circumstances approach does not apply where "[a]ll of the factors were considered by the [Sentencing] Commission in preparing the Guidelines...." *United States v. Berlier*, 948 F.2d 1093, 1097 (9th Cir.1991), absent truly "'extraordinary circumstances.'" *United States v. Anders*, 956 F.2d 907, 912 (9th Cir.1992), *cert. de-*

nied, —— U.S. ——, 113 S.Ct. 1592, 123 L.Ed.2d 158 (1993) (citation omitted).

In an unpublished opinion, a panel of this court followed the Ninth Circuit's approach, with the express *caveat* that "'a sentencing court should not treat as unique or unusual factors, those circumstances that the guidelines have already taken into account or expressly deemed irrelevant.'" *United States v. McKelvey*, No. 92–2310, 1993 WL 339704, at *4 (6th Cir. Sept. 1, 1993) (per curiam) (quoting *Brewer*, 899 F.2d at 511). It is on *McKelvey* that the defendant relies. However, assuming, without deciding, that the totality of circumstances approach to sentencing is proper, it was not warranted here because the guidelines contemplated all of the factors on which the district court based its departure.

■ First, the district court considered important the fact that the defendant did not make an active attempt to acquire the illegal weapon. The guideline applied by the court, U.S.S.G. § 2K2.1, however, identifies possession alone as a crime, separate and apart from unlawful receipt. The guideline's title clearly refers to unlawful receipt and unlawful possession in the alternative. U.S.S.G. § 2K2.1. Thus, the Sentencing Commission recognized that the guideline would be applied to crimes involving mere possession of an illegal weapon, regardless of the circumstances under which it was acquired.

Even the defendant did not disagree that the Sentencing Commission intended that the guideline apply to cases involving possession alone. Instead, he characterized his receipt of the illegal weapon as innocuous and atypical, and argued that the unusual circumstances surrounding his acquisition justified a downward departure. For this proposition, he depended entirely on *United States v. Russell*, 870 F.2d 18 (1st Cir.1989), in which the defendant, an armored car driver, kept a money bag erroneously given to him. Almost immediately, however, the *Russell* defendant voluntarily turned himself in and returned the money. *Id.* at 19.

Even if we were to agree that departure is warranted when the *corpus delicti* of the crime innocently falls into a defendant's lap, the defendant here presents no such atypical

case. He had no abrupt change of heart, nor did he voluntarily report his wrongdoing. Rather, his illegal possession continued for some fifteen years, and was reported, not by the defendant, but by Hyde.

■ Next, the district court took into account the facts that the defendant did not alter the weapon to its illegal length, and that he did not use the weapon in other criminal activity. However, the National Firearms Act, under which the defendant was convicted, treats the making of an illegal firearm, *see* 26 U.S.C. § 5861(f), as a crime separate from that of possession of an illegal firearm, *see* 26 U.S.C. § 5861(d). Similarly, the sentencing guidelines separately identify these two crimes in defining the offenses subject to sentencing pursuant to U.S.S.G. § 2K2.1. U.S.S.G.App.A. Accordingly, the statute and the guidelines recognize possession of a sawed-off shotgun as a crime distinct from the offense of altering a weapon to illegal status.

It is similarly clear the Sentencing Commission considered the fact that some illegal weapons are merely possessed, while others are used for nefarious purposes. For example, section 2K2.1 provides for a four-level upward adjustment in base offense level in the event that the illegally possessed firearm was used to further other felonious activity. U.S.S.G. § 2K2.1(b)(5).

Other subsections and the commentary to section 2K2.1 take into account that possession in some instances or for some purposes presents a less threatening situation than in others. For example, mere possession of an unregistered legal firearm warrants a sharply lower base offense level than possession of an unregistered illegal firearm. *See* U.S.S.G. § 2K2.1(a)(7). Interstate transportation of a firearm in violation of state or federal law, but not for "any other underlying unlawful purpose," can warrant a lower base offense level. U.S.S.G. § 2K2.1, comment. (n. 8). In addition, the guidelines contemplate a lower base offense level in limited instances where a firearm is "possessed ... solely for lawful sporting purposes or collection." U.S.S.G. § 2K2.1(b)(2).

■ Finally, as to the district court's consideration of the other charges brought against the defendant, the sentencing guidelines expressly instruct the district court on how to proceed when sentencing a defendant already serving a sentence for a related offense. *See* U.S.S.G. § 5G1.3. As the guidelines commentary provides,

> This guideline provides direction to the court when a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment.... [T]his guideline is intended to result in an appropriate incremental punishment for the instant offense that most nearly approximates the sentence that would have been imposed had all the sentences been imposed at the same time.

*Id.*, comment. (backg'd.). Thus, to the extent the defendant claimed he had been inordinately punished by prosecutorial zeal, his concern is a common one that the Sentencing Commission addressed and resolved.

Based on the foregoing analysis, we conclude that the district court erroneously aggregated factors in order to depart downward. Even if we were to adopt the totality of circumstances approach to downward departures, the district court erred by accumulating typical factors "already taken into account" by the sentencing guidelines, in order to arrive at an atypical result. *Brewer*, 899 F.2d at 511. Because the guidelines clearly contemplated all of the factors considered by the district court, no downward departure was justified.

■ Moreover, even if the defendant identified appropriate grounds for departure, the district court erred in departing beyond the next lower criminal history category without identifying the level of reduction occasioned by each factor. As we held in the case of an "upward" departure, the "sentencing court must examine the next higher criminal history category ... and if departing beyond this next level, the sentencing court must demonstrate that it found the sentence imposed by the next higher level too lenient." *United States v. Lassiter*, 929 F.2d 267, 270 (6th Cir.1991). We must apply the same standard of review to downward departures. *United States v. Nelson*, 918 F.2d 1268, 1270 (6th

Cir.1990). Accordingly, the district court's failure to explain the breadth of its departure provides an additional basis for remanding the case.

### III.

We **VACATE** the district court's sentencing order, and **REMAND** the case for resentencing.

KEITH, Circuit Judge, separately concurring.

Although I generally believe trial judges should be allotted more discretion in sentencing, this is one of the few cases illustrating that occasionally, the uniformity and consistency mandated by the Sentencing Guidelines prevent judicial abuse of discretion.

The district court found Dalecke's conviction was an "atypical" case warranting downward departure. The most important factor the district court cited was that police acquired possession of the gun as a result of a vindictive domestic dispute between Dalecke and his girlfriend.

In creating the Sentencing Commission, Congress strove for uniformity in sentencing. *United States v. Brewer*, 899 F.2d 503, 506 (6th Cir.), *cert. denied*, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). A sentencing court may depart from the sentence specified by the Guidelines only if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). The sentencing court should not treat as unique or unusual factors the Guidelines have expressly found to be irrelevant. *United States v. Brewer*, 899 F.2d at 511; *United States v. Todd*, 920 F.2d 399, 408 (6th Cir.1990).

In reviewing the sentencing court's downward departure, we determine whether:

1) the case is sufficiently unusual to warrant departure;

2) the circumstances actually exist; and

3) the direction and degree of departure is reasonably supported.

*United States v. Brewer*, 899 F.2d at 506.

At first blush this case may appear "sufficiently unusual" to warrant departure, but it is actually quite mundane. The most important factor in finding the case was unusual, according to the district court, was the method of apprehension resulting in multiple punishments.

Here, however, there was no atypical apprehension of Dalecke. Self-centered motives of informants are not sufficiently unusual to warrant departure. Rather, it is unusual for informants, especially those close to offenders, to cooperate with officials absent incentives. I believe it is immaterial whether the informant is a co-conspirator turned government's witness to receive immunity, or is a girlfriend who witnesses illegal activity and is later scorned by the offender.

Regarding the many punishments, the majority correctly stated, "the sentencing guidelines expressly instruct the district court on how to proceed when sentencing a defendant already serving a sentence for a related offense."

While I dislike taking discretion from trial judges, the Guidelines were established to bring uniformity and consistency into sentencing. Trial judges must not be allowed to use "unusual circumstances" as a pretext for considering race, national origin or socioeconomic factors, which is clearly not allowed. U.S.S.G. § 5H1.10. Under the guidelines, it is irrelevant whether a defendant is an indigent teenager from Detroit, Michigan or a forty-one year old successful businessman from Wyoming, Michigan.