UNITED STATES of America

v.

William J. BURNS.

No. 88–3161.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 16, 1989.
Decided Jan. 12, 1990.

Maureen DelDuca, (appointed by this Court as co-counsel), with whom Steven H. Goldblatt, (appointed by the Court), was on the brief, for appellant.

J. Douglas Wilson, Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., Washington, D.C., was on the brief for appellee.

Before MIKVA, SILBERMAN, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case requires us to rule on the validity of the trial judge's decision to depart from the sentence range contemplated in the Federal Sentencing Guidelines. The defendant, William J. Burns, pled guilty to theft of government funds, making a false claim against the government, and income tax evasion, crimes for which he expected to receive a sentence of 30 to 37 months in prison pursuant to the applicable Guidelines range. Despite the agreement of the U.S. attorney to the 30–37 month range and the recommendation of Burns' probation officer that Burns receive a sentence within that range, the trial judge found three reasons for an upward departure and sentenced Burns to 60 months in prison. Burns appeals his sentence, contending that the trial judge relied on impermissible grounds in enhancing his sentence and that the extent of departure was unreasonable. He also maintains that the Federal Rules of Criminal Procedure and the Guidelines require that he be given advance notice of the judge's intention to depart. Because we find that the trial judge relied on three legitimate grounds for her departure decision and that nothing in the law requires a trial judge to provide advance notice of her intention to depart from the Guidelines, we affirm. As we are troubled by the plea bargaining procedure used in this case, we suggest that future plea agreements explicitly address the possibility that the trial judge may depart from the Guidelines, even if such a departure is not recommended by the government or the probation officer.

## I. BACKGROUND

Burns was employed by the United States Agency for International Development ("AID" or "the agency") from 1967 until 1988. Beginning in February 1982, he used his position as a supervisor in the agency's Financial Management Section to authorize the payment of unused travel funds from the U.S. Treasury to Vincent Kaufman. However, the payments to Kaufman were really a front for diverting government funds to Burns' own pocket. From 1982 to 1988, Burns authorized the issuance of 53 checks totaling in excess of $1,200,000. Burns' scheme was discovered after a routine security check revealed that he owned a $400,000 house despite his annual salary of $35,000. Prior to his arrest, but after the government became aware of his embezzlement activities, Burns authorized the issuance of two checks in the name of Vincent Kaufman; these checks formed the basis for the government's case against Burns on charges of making false claims against the government.

After his arrest, Burns and the government entered into an agreement whereby Burns agreed to plead guilty to theft of government funds in violation of 18 U.S.C.

§ 641, making a false claim against the government in violation of 18 U.S.C. § 287, and evasion of income tax in violation of 26 U.S.C. § 7201. Burns agreed to surrender all of his assets, except for some minor personal property, and to pay restitution to the government by surrendering 50 percent of all his future annual income over $40,000 and 100 percent of all future annual income over $70,000. He also agreed to cooperate fully with the government in its investigation of the matter. Under the agreement, both parties understood that Burns' plea would be covered by the Sentencing Guidelines and that a sentencing level of 19, Criminal History Category I (30–37 months) would apply to his case.

The probation officer's presentence report also concluded that Burns' sentence would be within the 30–37 month range, and did not recommend that Burns be given a sentence in excess of that prescribed by the Guidelines. At the sentencing hearing, however, Judge Johnson concluded that in order to give Burns an appropriate sentence, the court had to depart from the Guidelines. She noted that according to 18 U.S.C. § 3553(b), the sentencing judge is entitled to depart from the Guidelines in light of aggravating or mitigating circumstances that were not adequately considered by the Sentencing Commission. The trial judge found three factors involved in Burns' case that were not adequately addressed by the Guidelines. First, she found that although the Guidelines permit adjustment for the amount of money stolen and the level of planning, they do not give sufficient weight to the duration of the crime. Because the defendant's fraudulent scheme persisted for six years and involved 53 separate instances, the judge concluded that departure from the Guidelines was warranted.

Additionally, while the Guidelines do consider the defendant's violation of the public trust, the trial judge found that the defendant's systematic abuse of the government's process of paying legitimate vendors, in addition to violating the public trust, constituted a disruption of government functions. Since § 5K2.7 of the Guidelines permits departure when "the defendant's conduct resulted in the significant disruption of a governmental function," the trial court found this to be a second reason for imposing an enhanced sentence.

Finally, as the Guidelines also permit departure if "the defendant committed the offense in order to facilitate or conceal the commission of another offense," the trial judge concluded that Burns' evasion of over $400,000 in taxes allowed him to conceal his theft and false claims and accordingly justified an upward departure from the Guidelines.

## II. ANALYSIS

### A. Standard of Review

The Sentencing Guidelines provide that a trial judge can depart from the Guidelines based on aggravating or mitigating circumstances which were not adequately considered by the Sentencing Commission in formulating the Guidelines. 18 U.S.C. § 3553(b). If a factor is one which the Commission has already considered, it must be "present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction." Guidelines § 5K2.0, ¶ 2. Determining whether a certain factor is an appropriate ground for enhancement of a sentence involves a question of statutory interpretation. To the extent that this requires us to decide whether the Commission adequately considered that particular factor, we subject the court's determinations to plenary review. *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *see also, United States v. Burke,* 888 F.2d 862, 865 (D.C.Cir.1989). Once it has been established that a factor is a legally permissible basis for departure, we give broad deference to the district court's judgment as to the appropriateness of considering this factor, and we will uphold the departure so long as it is reasonable. 18 U.S.C. § 3742(e)(4). We will reverse the factual findings that the trial court relied upon in its departure decision

only if they are clearly erroneous. *Diaz–Villafane*, 874 F.2d at 49.

## B. *Reasonableness of Departure*

Burns maintains that the trial court erred in departing from the Guidelines. He contends that the concealment and duration factors upon which the trial judge relied in her departure decision had already been contemplated by the Sentencing Commission and thus could not form a separate basis for departure. Burns also argues that the trial court's finding that he significantly disrupted government functions was not supported by the record. He further contends that the degree of departure was unreasonable and that the trial court unfairly failed to give him notice of its intention to depart from the Guidelines. We dispose of each of Burns' arguments in turn.

### 1. Concealment

■ Burns maintains that because the Guidelines allow upward adjustment for "more than minimal planning," Guidelines §§ 2B1.1 and 2F1.1, his concealment of his theft and false claims through income tax evasion were factors that had already been considered within the Guidelines and therefore could not provide the basis for departure. Burns contends that since his "more than minimal planning" was not extraordinary, departure was unwarranted.

The trial court's upward departure for concealment, which is permitted under § 5K2.9 of the Guidelines, applied to Burns' tax evasion, and not to the fact that he used other elaborate methods to conceal his crimes. Therefore, while the Guidelines discuss an adjustment for "more than minimal planning" for theft of government funds and false claims, this applies only to the planning of those offenses. Burns' evasion of taxes to conceal his embezzlement scheme constituted a separate basis for an upward departure, distinct from the fact that his activities were well planned. Since it is possible to be guilty of tax evasion without concealing other crimes, we conclude that the trial court's decision to depart based on concealment was reasonable.

### 2. Duration

■ Burns argues that duration was also a factor considered by the Commission under the "more than minimal planning" adjustment and therefore cannot provide a separate ground for departure. He notes that the commentary to the Guidelines states that the "more than minimal planning" adjustment applies to "any case involving repeated acts over a period of time." Guidelines § 1B1.1, note 1(f). Therefore, since the Guidelines already accounted for the duration of his crime, and his theft was not highly unusual when compared to others, Burns contends that the departure decision was erroneous.

The trial court, however, specifically stated that her decision to enhance Burns' sentence was based not simply on planning but upon the prolonged and repetitive nature of Burns' crime. According to the Guidelines' commentary, "more than minimal planning means more planning than is typical for commission of the offense in simple form." Guidelines § 1B1.1, note 1(f). The court properly observed that in incorporating a "more than minimal planning" adjustment into the Guidelines, the Commission did not consider "the number of years and the amount of fraudulent transactions ... executed" by a defendant. Burns' crime involved 53 separate acts of theft over a six-year period. The trial judge could reasonably have concluded that the duration of *execution*, then, warranted enhancement. We note that a defendant who persists in his criminal activity over a period of years may deserve a harsher sentence than a defendant whose crime was limited in duration because the former has arguably had more opportunities to renounce his illegal schemes. Accordingly, the trial court's finding that the duration of Burns' crime justified departure, was not dependent upon the amount of planning involved in the crime, and thus was not unreasonable.

### 3. Disruption of Government Functions

Burns argues that because the record does not indicate that his activities caused any disruption of government functions beyond the disruption which is inherent in the offense, the departure decision was erroneous. He notes that the Commission's policy statement regarding disruption of government functions indicates that "unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference." Guidelines § 5K2.7. Burns argues that because his crime went undetected for six years and the money he stole was a tiny fraction of AID's budget, his activities could not have caused a significant disruption of government functions.

The Guidelines contemplate departure for crimes which significantly disrupt the function of the government. We reject Burns' argument that this was not an appropriate case for such departure. The fact that Burns' crimes went undetected for so long does not indicate that his activities caused little disruption. Rather, the record indicates that he diverted government resources and used federal mechanisms to perpetrate his crimes. Such misuse of the government's vendor payment process is clearly disruptive; it diverts federal resources from legitimate to illegitimate recipients.

Although disruption of government functions is an inherent aspect of crimes such as bribery, the Commission's policy statement indicates that "when the conviction is theft ... and that theft caused disruption of a government function, departure from the applicable guideline more readily would be appropriate." Guidelines § 5K2.0, ¶ 2. In this case, the trial judge found that Burns' misuse of his position resulted in a "disruption of government function" beyond that which naturally accompanies diverting resources from legitimate to illegitimate recipients. Burns' manipulation of AID procurement apparatus required the unwitting assistance of many government personnel, who were diverted from their legitimate tasks by the demands of his scheme. The record demonstrates that Burns relied upon clerks to prepare forms necessary to divert government funds, and that his checks to "Vincent Kaufman"—issued by the United States Treasury—required administrative resources: including time and personnel to process these checks. Burns' illegal use of AID's system of paying its vendors, then, can be readily distinguished from those crimes involving basic theft of government property, such as stealing government supplies. The trial judge's conclusion that Burns' entanglement of two federal departments in his plan constituted disruption of a government function cannot be deemed unreasonable.

### 4. Reasonableness of Departure

Burns argues that the amount of departure—23 months, or 62 percent above the maximum sentence under the Guidelines—was unreasonable in light of the trial court's reasons for departure and the purposes behind the punishment. Burns contends that the 60–month sentence is greater than necessary to serve the purposes of retribution, deterrence, incapacitation, and rehabilitation that were contemplated by the Sentencing Reform Act of 1984. 18 U.S.C. § 3553(a). He notes that he has already lost all of his assets and that he must surrender a portion of all future earnings. Moreover, as he will never work for the government again, he asserts that excessive punishment is unnecessary to protect the public from his crimes. Finally, he argues that his financial skills will go to waste in prison and could better benefit society if he were released sooner.

The trial court is best situated to decide the length of the sentence and its finding should not be reversed unless it is arbitrary or capricious. *United States v. Juarez–Ortega*, 866 F.2d 747, 748 (5th Cir.1989). We cannot conclude that the sentence of 60 months is unreasonable. The trial judge offered three specific and legitimate grounds for departure, and it is not the place of this court to second-guess her sentencing decision. *See United States v. Roberson*, 872 F.2d 597, 606–607 (5th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

## 1348

### C. *Notice of Intention to Depart*

■ Burns maintains that the trial court erred by failing to give him an opportunity to comment on its intention to depart from the Guidelines. He notes that Federal Rule of Criminal Procedure 32(a)(1) requires the court to give both sides notice of the probation officer's presentence report, including any factors indicating that departure from the Guidelines would be appropriate. Furthermore, at the sentencing hearing, counsel must be given an opportunity "to comment upon the probation officer's determination and on other matters relating to the appropriate sentence." Burns maintains that Rule 32(a)(1), when read in conjunction with Guidelines § 6A1.3, requiring that the trial court fairly resolve any disputed factor important to sentencing, requires the sentencing judge to notify the parties of her intention to depart and provide them with an opportunity to comment.

Burns' notice argument lacks merit because a requirement that the court inform the parties of its intention to depart is not contemplated by Rule 32. Such a requirement would constitute a radical deviation from past practice and would impose a cumbersome burden on trial judges. Since the defendant had an opportunity to address the court before sentencing during his allocution and has a right to appeal his sentence, he has not been harmed by the trial court's lack of notice.

Despite the contrary conclusions of certain circuits, *see, e.g., United States v. Nuno–Para,* 877 F.2d 1409, 1415 (9th Cir. 1989); *United States v. Cervantes,* 878 F.2d 50, 55 (2d Cir.1989); *United States v. Otero,* 868 F.2d 1412, 1415 (5th Cir.1989), we do not see any language in Rule 32 or the commentary requiring the sentencing court to provide the parties with advance notice of its intention to depart from the Guidelines. Pre–Guidelines sentencing procedures never called for such notice of the judge's intention to deviate from a plea bargain or a probation officer's recommendation. This is not a case in which the court is going beyond the facts in the presentencing report in deciding to depart from the Guidelines. All of the facts that formed the basis of Judge Johnson's decision were contained in the presentencing report, and Burns could have challenged the factual findings if he had believed that they were erroneous. Concededly, a defendant will have less incentive to challenge these facts if he expects a sentence within the Guideline range. Burns is not challenging the facts—his 53 separate instances of theft over a six-year period and his tax evasion—which formed the basis for the trial judge's departure decision. His right to appeal preserves his ability to challenge the *legal* ground on which the departure decision rests.

Finally, because defense counsel and the defendant are allowed to address the court prior to sentencing, the defendant has been given an opportunity to persuade the trial judge why sentencing within the Guidelines is warranted. Although the defendant might have made a stronger argument for himself if he had known that the judge was intending to depart from the Guidelines and the reasons for such a departure, we do not see any language in Rule 32 or the Guidelines requiring the judge to tell the defendant he should make his best case.

The Guidelines are relatively new and are only beginning to be tested. It is true, as Burns points out, that the Guidelines envision a more formalized sentencing process. Guidelines § 6A1.3, Commentary ¶ 1. However, without a more specific command from Congress or the Commission, we do not conclude that the process must include advance notice of the trial judge's decision to depart from the Guidelines.

### D. *The Plea Bargaining Procedure*

■ Although we do not find merit in Burns' notice argument, we are troubled by the plea bargaining procedure used in this case. The plea agreement reached between Burns and the government specifically provided that if either the probation office or the trial court reached a calculation different from the 30 to 37 months that the parties had agreed on, the plea bargain would be null and void. However, the agreement did not mention what the

consequences were to be if the judge decided to depart from the suggested sentencing range.

We note that the defendant has waived his right to withdraw his guilty plea and face a trial. Therefore, the question as to whether he should be able to withdraw his guilty plea in light of the trial judge's decision to enhance his sentence is not at issue. Nonetheless, we are disturbed by the ambiguity in the language of the plea agreement regarding what should happen if the trial judge decided to depart from the suggested range. We realize that the Sentencing Guidelines are new to both prosecutors and defense attorneys and that such unforeseen situations may arise from time to time. We think it would be appropriate for prosecutors to modify the plea bargain agreement language to make clear that the bargain either contemplates the trial judge exercising her enhancement powers, or allows the defendant to withdraw his plea if the trial judge contemplates enhancement. If the language is left in its present vague form, a serious question could arise as to whether a defendant has reserved the power to withdraw a plea if the trial judge decides to depart from the sentencing range that the parties agreed upon.

### III. Conclusion

Because the trial judge articulated three legitimate reasons why departure from the Guidelines was appropriate, her decision to impose a sentence in excess of the 30 to 37 month recommended range should not be disturbed. As the defendant has not been harmed by the trial court's failure to give him notice of its intention to depart from the Guidelines, and since such a notice requirement does not appear on the face of Rule 32 or within the Guidelines, we affirm.