**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mabel Lee GRAY, Defendant–Appellant.**

No. 93–1141.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 18, 1993.

Decided Feb. 8, 1994.

James A. Brunson, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Bay City, MI, for plaintiff-appellee.

Henry J. Sefcovic (argued and briefed), Bay City, MI, for defendant-appellant.

Before: MARTIN and RYAN, Circuit Judges, and EDGAR, District Judge.[*]

BOYCE F. MARTIN, JR., Circuit Judge.

Mabel Lee Gray appeals the sentence she received from the district court after pleading guilty to unauthorized use of an access device in violation of 18 U.S.C. § 1029(a)(2). In the presentence report, which the court received without objection by either party, Gray's criminal history category was computed to be IV, with an offense level of eleven. This computation results in a recommended sentence of eighteen to twenty-four months under the United States Sentencing Guidelines. The district court, however, imposed an actual sentence of fifty-seven months. In doing so, the court used a hypothetical criminal history category of VIII, based on Gray's "extraordinarily extensive" criminal history, and an offense level of fifteen, reflecting a four-level upward adjustment under United States Sentencing Guideline § 2A4.1(b)(7)(B) for unlawful restraint of a victim. For the following reasons, we vacate Gray's sentence and remand for resentencing.

From June to August 1991, Mabel Lee Gray lived under an alias with Ethyl Beverly, a senior citizen, in Beverly's Saginaw, Michigan home. During this time, Gray helped Beverly with household chores and errands, and also gained access to Beverly's Sears and Discover credit cards without permission. After requesting two additional Discover cards on Beverly's account, Gray incurred charges of $5,321.02 with the unwitting help of Gray's son and her grandson's mother. Gray and her son also charged $3,723.83 to Beverly's Sears account.

While living at Beverly's house, Gray handled the mail and kept the Sears and Discover card statements from Beverly. Gray later admitted that she also denied Beverly access to family members against Beverly's wishes. After Beverly discovered Gray's unauthorized credit card usage in September, Gray was indicted by a grand jury on a charge of unauthorized use of an access device in violation of 18 U.S.C. §§ 2 and 1029(a)(2).

Pursuant to a plea agreement with the government, Gray pled guilty to the violation of 18 U.S.C. § 1029(a)(2). The agreement provided that the government would recommend a two-point offense level reduction for acceptance of responsibility, under Section 3E1.1 of the Sentencing Guidelines, and that Gray's term of incarceration would not exceed the midpoint of the guideline range the district court found to be applicable. The district court accepted Gray's guilty plea, but deferred acceptance of the plea agreement until sentencing.

In the presentence report, Gray's overall offense level was calculated as eleven, with a criminal history category of IV. Under the Sentencing Guidelines, these calculations correspond to a sentencing range of eighteen to twenty-four months' imprisonment. Given the plea agreement's limitations, the appropriate sentencing range would have been between eighteen and twenty-one months. However, the district court ultimately refused to accept the plea agreement. After warning Gray that her term of imprisonment would be "a good bit" more than twenty-four months, and giving her the opportunity at sentencing to withdraw her guilty plea, the court sentenced her to a fifty-seven month term of incarceration with three years of supervised release. The district court stated that the sentence was based on its calculation of a hypothetical criminal history category of VIII, which more accurately reflected Gray's numerous prior convictions on charges of attempted false pretenses, check-kiting, forgery of a United States Treasury check, and possession of stolen mail. The court also computed a hypothetical offense level of fifteen, which incorporated a four-level upward adjustment pursuant to its finding that Beverly had been unlawfully restrained within the meaning of Sentencing Guideline § 2A4.1(b)(7)(B). Finally, the court ordered Gray to pay restitution of $9,044.85 to Sears and Discover Card, and imposed a fifty-dollar special assessment. This timely appeal followed.

[*] The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennes-see, sitting by designation.

■ Initially, Gray contends that the district court misapplied Section 4A1.3 when it computed a hypothetical criminal history category of VIII. The policy statement contained in Section 4A1.3, as amended in 1992, provides in relevant part:

Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

U.S.S.G. § 4A1.3, p.s. Considering this language, we see that "instead of hypothesizing a criminal history range more than VI, the guidelines require a sentencing court to look to the other axis and consider the available ranges from higher offense levels." *United States v. Carr*, 5 F.3d 986, 994 (6th Cir.1993). In the instant case, the district court failed to apply the Sentencing Guidelines properly in structuring its upward departure.

■ A misapplication of the Guidelines by a district court warrants a remand "for further sentencing proceedings with such instructions as the court considers appropriate[.]" 18 U.S.C. § 3742(f)(1); *Williams v. United States*, — U.S. —, —————, 112 S.Ct. 1112, 1118–19, 117 L.Ed.2d 341 (1992). On remand, the district court may make an upward departure, in its discretion, but may not create a hypothetical criminal history category greater than VI. If the court decides that an additional adjustment is necessary through the selection of a higher offense level, it must "demonstrate why it found the sentence imposed by each intervening level to be too lenient." *Carr*, 5 F.3d at 994 (citing *United States v. Lassiter*, 929 F.2d 267, 270 (6th Cir.1991). We express no view as to whether the circumstances for departure described by the district court exist in this case, or are sufficiently unusual to support such an action. *See Carr*, 5 F.3d at 994 n. 3 (citing *United States v. Brewer*, 899 F.2d 503, 506 (6th Cir.), *cert. denied*, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990)).

■ Gray also argues that the district court misapplied the Sentencing Guidelines when it adjusted her offense level upwards by four levels, under Section 2A4.1(b)(7)(B), pursuant to its finding that Beverly was unlawfully restrained. As we recently recognized in *United States v. Garner*, 940 F.2d 172, 174 (6th Cir.1991) (citations omitted):

We review a district court's factual findings which underlie the application of a guideline provision for clear error. However, whether those facts as determined by the district court warrant the application of a particular guideline provision is purely a legal question and is reviewed *de novo* by this court.

The district court advanced the following justification for its imposition of a four-level upward adjustment under Section 2A4.1(b)(7)(B):

The Court finds additionally that the defendant's offense level must be elevated in this analysis, going beyond what the guideline calculation is, because the defendant on this occasion and on at least one other earlier occasion denied access to the victim of these frauds against the victim's wishes. These are acts which are equivalent to restraining a relatively helpless victim in addition to the fraudulent activities in which the defendant is consistently engaged, and I think that adds a degree of danger and, certainly, aggravation that would not have otherwise been present. Would not have been present in a large number of other defendants who would be convicted and are consistently convicted in Federal court of very similar offenses.

Adding this degree of isolation of a helpless and elderly victim—at least helpless, maybe helpless and elderly at the same time—that's an aggravating factor the Court cannot ignore. . . . The unlawful restraint I find is evident from the facts. Pursuant to Guideline 2A4.1(b)(7)(d) [sic], will be applied and the resulting four level adjustment raises a hypothetical guideline range of level 15 and a hypothetical criminal history grid of level 8, almost level 9.

(J.A. at 87–88). We accept these findings of fact by the district court, as they are not clearly erroneous. Therefore, we must de-

termine whether the provisions of Section 2A4.1(b)(7)(B) are applicable to these findings. Section 2A4.1(b)(7)(B) reads in relevant part:

§ 2A4.1. *Kidnapping, Abduction, Unlawful Restraint*

. . . . .

(b) Specific Offense Characteristics

. . . . .

(7) If the victim was kidnapped, abducted, or unlawfully restrained during the commission of, or in connection with, another offense or escape therefrom; or if another offense was committed during the kidnapping, abduction, or unlawful restraint, increase to—

. . . . .

(B) 4 plus the offense level from the offense guideline applicable to that other offense, but in no event greater than level 43, in any other case ...

"Unlawful restraint" is not defined in this provision nor in the remainder of the Guidelines. However, upon examination of the remainder of the language in the quoted provision, the corresponding commentary and background, and analogous definitions in the Guidelines, we conclude that Gray's conduct, as described by the district court, does not rise to the level of "unlawful restraint" within the meaning of Section 2A4.1(b)(7)(B).

 First, we note that Section 2A4.1(b)(4) sets forth specific offense level adjustments based on the elapsed time before a victim is "released." In the instant case, the district court made no finding that Beverly was held in her home or was not free to leave at any time. In short, the term "released" implies that the victim was physically restrained to some degree. Here, there is no evidence in the record of such a restraint.

Additionally, the background commentary to Section 2A4.1 speaks exclusively of kidnapping cases encompassing three categories of conduct: limited duration kidnapping where the victim is released unharmed, kidnapping for ransom or political demand, and kidnapping occurring as part of or to facilitate the commission of another offense. U.S.S.G. § 2A4.1, comment. (backg'd.). We view the term "unlawful restraint," in this context, to be a residual term designed to cover all forms of physical or forcible restraint of a victim.[1] Because such restraint was lacking here, we believe that Section 2A4.1(b)(7)(B) is inapplicable to the facts of this case. On remand, the district court should determine the appropriate offense level for sentencing purposes without reference to this provision.

For the foregoing reasons, we vacate the sentence imposed by the district court and remand for resentencing.

---

1. The term "physically restrained" is defined in the Guidelines as "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1, comment. (n. 1(i)). Although we would read the term "unlawful restraint" more broadly, as being less severe than "physical restraint," some physical component to an "unlawful restraint" is still necessary by implication due to the context of Section 2A4.1(b)(4).