UNITED STATES of America, Plaintiff,

v.

John Thomas MORBERG, Defendant.

No. 1:94–CR–21.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 30, 1994.

Stephen T. Rabaut, St. Clair Shores, MI, for plaintiff.

Richard S. Murray, Asst. U.S. Atty., Grand Rapids, MI, for defendant.

## MEMORANDUM OPINION REGARDING DEPARTURE FROM THE SENTENCING GUIDELINES

McKEAGUE, District Judge.

Defendant John Thomas Morberg is now before the Court for the purposes of sentencing. Defendant was employed by the State of Michigan as the director of the House Fiscal Agency ("HFA") from 1978 to 1993. On February 23, 1994, defendant was named in a ten-count indictment which alleged various criminal activities by defendant in the course of his employment as HFA director. Defendant pleaded guilty on April 14, 1994, to Counts 1 and 9 of the indictment. Count 1 alleged that from in and about May, 1990, to in and about December 1991, defendant engaged in interstate commerce through a pattern of racketeering activity at the HFA in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). Violation of this provision carries a maximum prison sentence of 20 years. Count 9 charged that on or about April 15, 1991, defendant did knowingly, willfully, and unlawfully attempt to evade and defeat a substantial part of the income tax due and owing by him for the calendar year 1990, in violation of 26 U.S.C. § 7201. This violation carries a maximum prison sentence of five years.

The Probation Department has concluded that application of the United States Sentencing Guidelines indicates that defendant has a total offense level of 22 for purposes of Counts 1 and 9, and a criminal history category of I. Probation recommends that defendant receive a sentence within the guidelines range of 41 to 51 months for Counts 1 and 9.

On July 15, 1994, the Court gave notice that it may depart upward, and requested the parties to address the following factors which may justify an upward departure:

1. The duration and the repetitiveness of the criminal conduct as set forth in the presentence report;

2. The defendant's unique responsibilities to the public;

3. The defendant's efforts to conceal his crimes as set forth in the report;

4. The loss of public confidence in the institution of state government occasioned by the defendant's conduct; and

5. The harm caused to the public and state institutions due to the misapplication of financial resources of the state government.

The government filed a memorandum generally opposing an upward departure and requesting a downward departure of four levels, pursuant to ·§ 5K1.1, based on defendant's cooperation with the government. Defendant filed a memorandum in opposition to upward departure, contending that such departure is unwarranted and outside the scope of the Sentencing Guidelines. Specifically, defendant claims that the second, fourth and fifth factors relied on by the Court have already been accounted for by the guidelines; that the first factor does not warrant upward departure because only a small amount of the total funds embezzled went directly to defendant; and that the third factor, efforts to conceal his crimes, is insufficient to justify upward departure because all defendant did was prepare a phony ledger (which he destroyed before using) and back-dated contracts.

The Court has carefully considered the sentencing guidelines, the parties' memoranda in opposition to an upward departure, and the parties' arguments at a hearing on August 30, 1994. The Court concludes that an upward departure in the total offense level used to sentence the defendant under Count 1 is warranted because of aggravating circumstances of a kind and to a degree which were not adequately taken into account by the Sentencing Commission when it formulated the guidelines.

In reaching this conclusion, the Court is mindful that the Sentencing Commission carefully drafted the guidelines to accommodate most situations, and that a departure is therefore appropriate only in the most extreme circumstances. The Court concludes, however, that a sentence within the 41 to 51 month range for the RICO violations set forth in Count 1 would not constitute a fair and just sentence, given the magnitude of the defendant's crimes and the harm to the institution of state government which his conduct has occasioned. Although both the United States and the defendant oppose an upward departure in this matter, the Court believes that a departure is warranted under the significant body of· caselaw which has addressed the issues raised by the facts of this case and in light of the extreme circumstances present in this case.

The Court concludes that offense level 30,· which provides for a sentence in the range of 97 to 121 months, is appropriate for Count 1 and now turns to the specific facts which support this conclusion. The Court will then address the government's request for a downward departure for substantial assistance pursuant to § 5K1.1 of the sentencing guidelines.

## DISCUSSION

The sentencing court's authority to depart upward from the sentencing guidelines arises under 18 U.S.C. § 3553(b). That provision states:

> The court shall impose a sentence of the kind, and within the range, referred to in [the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

Pursuant to this statute, the district court has discretion to depart from the guidelines in extraordinary cases. The Sentencing Commission has recognized this discretion in § 5K2.0 of the guidelines:

> Under 18 U.S.C. § 3553(b) the sentencing court may· impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines

that should result in a sentence different from that described." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the courts.... Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.*, as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

U.S.S.G. § 5K2.0.

The above considerations mandate strict adherence to the guidelines whenever they have accounted for a factor, "unless rare and exceptional circumstances warrant departure." *United States v. Dalecke*, 29 F.3d 1044, 1046 (6th Cir.1994) (quoting *United States v. Brewer*, 899 F.2d 503, 506 (6th Cir.), *cert. denied*, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990)). Accordingly, this Court may impose a sentence in excess of the guidelines range only if there exists an aggravating circumstance not adequately considered by the Sentencing Commission, or if, in light of the unusual circumstances of the case, the guidelines level attached to that factor or circumstance is inadequate. *United States v. Heckman*, 30 F.3d 738, 741 (6th Cir.1994).

■ When reviewing a sentencing court's decision to depart upward, the Sixth Circuit applies a three-step analysis to that decision. First, the circumstances relied on by the district court must be sufficiently unusual to warrant departure, that is, of a kind or to a degree not adequately taken into consideration by the guidelines. Second, the circumstances relied on by the court in its decision

to depart must actually exist. And third, the direction and degree of the departure must be reasonable. *Brewer*, 899 F.2d at 506; *United States v. Joan*, 883 F.2d 491, 494 (6th Cir.1989) (quoting *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.1989)). The first question, whether circumstances sufficiently unusual to warrant departure exist, is a question of law. *Joan*, 883 F.2d at 494. The second, whether the circumstances actually exist, involves a factual determination which may not be set aside absent clear error. *Id.* The third inquiry, whether the departure is reasonable, is essentially a judgment call and, accordingly, the sentencing court's determination "must be given great deference ... provided the ... court has recognized that departure is the exception, and has adequately articulated its reasons for departure." *Id.* at 494, 496. Additionally, when departing upward by selecting a higher offense level, the sentencing court must "demonstrate why it found the sentence imposed by each intervening level to be too lenient." *United States v. Gray*, 16 F.3d 681, 683 (6th Cir.1994); *United States v. Carr*, 5 F.3d 986, 994 (6th Cir.1993).

■ Pursuant to these requirements set forth by the Sixth Circuit for a departure from the guidelines, the Court first articulates the reasons for its decision to depart. The Court bases its decision to depart upward on four different grounds. First, departure is warranted based on the extreme duration and repetitive nature of the offenses which are the basis for the racketeering charge. Second, departure is appropriate because defendant violated his unique responsibilities to the public as the director of an agency of the state legislature. Third, departure from the sentencing range prescribed by the guidelines is warranted since defendant's criminal actions undoubtedly have led to a loss of public confidence in an institution of the state government. Finally, departure is appropriate because defendant's activities resulted in a misappropriation of the limited financial resources of the State of Michigan and a significant disruption of government services.[1]

---

1. The Court concludes that defendant's efforts to     conceal his crimes, identified as the third factor

The Court first discusses each of these grounds for departure. The Court then applies these grounds to the actual sentencing guidelines ranges to determine what constitutes an appropriate and reasonable sentence in light of the unique facts and circumstances of this case. The facts relied on by the Court are those set forth in full in the presentence report to which no objection was made by defendant.

## I. Extreme Duration & Repetitiveness of Criminal Conduct

In the Court's opinion, the lengthy duration and the extremely repetitive and frequent nature of the criminal acts which underlie· the racketeering charge are factors which were not adequately taken into consideration by the guidelines and which militate in favor of an upward departure. The presentence report reveals that defendant Morberg misappropriated some 1.114 million dollars from the HFA over the course of nearly six years. According to the report, defendant essentially used the HFA as his private bank, and the agency's cash imprest fund as his personal checking account. Defendant used the embezzled monies to fund, for himself and others, investments, vacations, furniture purchases, credit card payments, dental work, gambling, paying "employees" for non-existent jobs, payment of property taxes, residential equity buy-outs, and miscellaneous social events, from 1987 to January of 1993. The extent and the frequency of these acts of embezzlement of state funds constitute aggravating circumstances which were not adequately taken into account by the Sentencing Commission, and thus an upward departure on this basis is warranted.

The Sixth Circuit has held that the duration and extent of the activities which comprise the relevant conduct may support an upward departure from the guidelines. In *United States v. Benskin*, 926 F.2d 562 (6th Cir.1991), the Court of Appeals reviewed a district court's decision to depart upward in sentencing a defendant who had pleaded guilty to mail and securities fraud. The Sixth Circuit noted that the defendant's

fraudulent activities had continued for nearly five years and had resulted in the loss of over 3 million dollars to more than 600 investors. *Id.* at 566. Given these facts, the court concluded that the "circumstances relied on by the district court ... are of a kind or degree that may appropriately be relied upon to justify departure." *Id.* (quoting *Diaz–Villafane*, 874 F.2d at 49).

Other courts have approved upward departures under similar circumstances. In *United States v. Burns*, 893 F.2d 1343 (D.C.Cir. 1990), *rev'd on other grounds*, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), the defendant used his position as a financial supervisor for a federal agency to embezzle money for his own personal use some 53 different times over the course of six years. The trial judge departed upward at sentencing *sua sponte*, ruling that the guidelines did not give sufficient weight to the duration of defendant's conduct. *Id.* at 1344–45. The D.C. Circuit held that the duration of the conduct was a proper basis for departure. The court stated:

> We note that a defendant who persists in his criminal activity over a period of years may deserve a harsher sentence than a defendant whose crime was limited in duration because the former has arguably had more opportunities to renounce his illegal schemes.

*Id.* at 1346. Similarly, in *United States v. Hart*, 803 F.Supp. 53 (E.D.Mich.1992), the Eastern District of Michigan ruled that the defendant's repeated acts of embezzlement from Detroit Police Department funds over a period of seven years, amounting to a loss of well over 2.3 million dollars, warranted an upward departure. *Id.* at 57–59. Finally, in *United States v. Fuentes*, 729 F.Supp. 487 (E.D.Va.1989), *aff'd in part, remanded on other grounds*, 917 F.2d 1302 (4th Cir.1990), *cert. denied sub nom., Martinez–Cabre v. United States*, 499 U.S. 930, 111 S.Ct. 1334, 113 L.Ed.2d 265 (1991), the sentencing court ruled *sua sponte* that the guidelines range for a Continuing Criminal Enterprise was "manifestly inadequate in its failure to ac-

in the Court's notice, are adequately addressed in the extreme duration and repetitious nature of the offenses.

count adequately for the dimensions and duration" of the criminal conduct. *Id.* at 494. The criminal conspiracy in that case involved the distribution of some 50 kilograms of cocaine over a decade. Accordingly, the court departed upward four levels. *See also United States v. Shields*, 939 F.2d 780, 783 (9th Cir.1991) (district judge did not err in considering duration of criminal conspiracy—14 months—as factor which supported an upward departure).

Applying this caselaw to the facts of this case, an upward departure is appropriate. The record reveals that the HFA cash imprest fund was only to be used for miscellaneous payments of less than $100, vendor payments of between $100 and $5,000 which had a due date of ten days or less, employee travel advances made under the state's standardized regulations, and payment of payroll in the event of a discharged employee, lost check, or computer error. During the course of the defendant's criminal activity, the maximum amount of an cash imprest check was increased from $5,000 to $15,000. Despite these limitations on the use of the fund, however, the presentence report indicates that defendant used the fund on numerous occasions to make improper payments to his associates and HFA employees, at times receiving kickbacks:

(1) The first acts of embezzlement which can be documented occurred in 1987, and involved Warren Gregory, a long-time associate of defendant. Gregory was employed at the HFA and was paid out of the HFA cash imprest fund. Between 1987 and 1992, Gregory received 49 cash imprest checks from the HFA. Although some may have been for legitimate purposes, those checks that were improperly issued accounted for $82,010 of the money which was embezzled by the defendant.

(2) Malik Hodari, a personal friend of the defendant, worked at the HFA as both a regular employee and then later on a contractual basis. The presentence report reveals that Hodari received at least 86 cash imprest checks from the defendant or the defendant's secretary, Catherine Beckholt, from December of 1986 to October of 1992. Hodari has indicated that he received some $422,607 to which he was not entitled. Defendant admits that at least $55,000 of this money was kicked back to defendant for his own personal use. Hodari also received a voucher from the State of Michigan in the amount of $20,000 after he advised the defendant that he had a significant shortage in his trust account.

(3) Dwight Anderson, a friend of the defendant's for over 30 years, began working for defendant at the HFA as a contractual consultant. In late 1987 or early 1988 he was taken off the payroll and compensated strictly through the cash imprest fund. There is no documentation of any work that Anderson allegedly performed for HFA during this period of time. The presentence report indicates that Anderson received approximately $271,500 from the HFA cash imprest fund for what was essentially a non-existent job.

(4) David Ciochetto began his employment with HFA in 1986 as an intern, before becoming a fiscal analyst in 1987. He received a variety of cash advances, merit increases, and other checks from defendant to take care of Ciochetto's personal financial indebtedness. According to the presentence report, Ciochetto illegally received about $106,204, and kicked back about $20,000 to defendant and another individual named Stephen Shepich.

(5) John Binion supervised the regulatory area of the HFA, which includes labor, licensing, and regulation, and became a close personal friend of defendant. According to the presentence report, when Binion faced financial problems, he received some $84,593 above and beyond his salary from the cash imprest fund. Approximately $6,000 of this amount was kicked back to defendant. Binion and defendant also participated in stock transactions together, using commingled funds from the HFA cash imprest fund and their own accounts to finance their dealings. Additionally, defendant used cash imprest funds to pay for psychological counseling for an HFA employee who was allegedly assaulted by Binion at a conference.

(6) Gerald de Juliannie, a fiscal analyst at HFA, received some 20 checks from the cash imprest fund which the government consid-

ers questionable. On at least one occasion, he kicked back $1,000 to defendant.

(7) Catherine Beckholt was defendant's personal secretary. According to the presentence report, she illegally received $48,-805 from the HFA cash imprest fund over several years. Over $10,000 of this amount was directly authorized by defendant between 1990 and 1992 to assist Beckholt with personal financial difficulties. An additional $12,500 was received by Beckholt by virtue of several signed, blank checks which defendant kept with Beckholt for use in the event of an emergency. Beckholt received the remaining amount through ten HFA checks which were fraudulently documented as office expenses.

(8) Finally, several other HFA employees improperly received funds from the cash imprest fund for unauthorized maternity leave, medical bills, dental work, retroactive pay raises, "loans," and for work which was never performed.[2]

These facts from the presentence report indicate that the defendant's illegal use of the HFA cash imprest fund to benefit himself, his associates and friends, and his employees, lasted for nearly six years and consisted of literally hundreds of transactions. Although proof of a "pattern of racketeering activity" is essential to the racketeering charge set forth in Count 1 of the indictment, a pattern requires only two predicate acts. *See* 18 U.S.C. §§ 1961(5), 1962(c). Defendant's criminal acts of fraud and embezzlement which form the basis for the RICO count go far beyond this minimum. The guidelines range for racketeering activity thus cannot begin to account for the magnitude of the crimes which defendant has committed. Warren Gregory, Malik Hodari, and Gerald de Juliannie alone received over 150 illegal checks drawn by the defendant from the cash imprest fund over the six-year period. To equate these frequent, in fact routine, acts of embezzlement over a six-year period with racketeering activity that involves just a few

predicate acts would seriously understate the seriousness of the defendant's crime and result in disproportionality in sentencing.

It is therefore clear that the duration and the frequency of defendant's criminal activities constitute aggravating factors not adequately taken into account by the Sentencing Commission in formulating the guidelines. Given the extreme duration and repetitive nature of this criminal activity, an upward departure is warranted. *See Benskin,* 926 F.2d at 566; *Burns,* 893 F.2d at 1345–46; *Hart,* 803 F.Supp. at 58–59; *Fuentes,* 729 F.Supp. at 493–94.

## II. Defendant's Unique Responsibilities to the Public

Defendant's position as the director of the House Fiscal Agency, an agency of the state legislature, also justifies an upward departure from the sentencing guidelines range. As HFA director, defendant was solely responsible for monitoring the use of taxpayer money in the cash imprest fund. His abuse of this position of trust, and embezzlement of the fund money for his own personal use and for the use of others, constituted a serious breach of the public's trust in him, the HFA, and the Michigan Legislature.

Under § 3B1.3 of the sentencing guidelines, a two-level increase in the offense level for abuse of a position of public trust is provided. U.S.S.G. § 3B1.3. This increase is reflected in the total offense level of 22 set forth in the presentence report. Thus, defendant has already received an increase for his abuse of his public duties as director of the HFA. Section 5K2.0 makes clear, however, that the Court can depart from the guidelines, even if the reason for departure was taken into account in the guidelines, if the Court determines that in light of the unusual circumstances, the guidelines level attached to that factor is inadequate. U.S.S.G. § 5K2.0; *Heckman,* 30 F.3d 738, 741 (6th Cir.1994).

The Eastern District of Michigan has applied this rationale to support an upward

---

**2.** In concluding that an upward departure is warranted in this case, the Court has not distinguished between illegal conduct of the defendant which resulted in personal gain (i.e., the kickbacks) and illegal conduct which resulted in gain

to his friends, associates and acquaintances. There is no legal distinction between such actions and the Court does not intend to create one.

departure in a case involving a high-ranking public official. In the *Hart* case, *supra*, the district court concluded that the two-level increase under § 3B1.3 for abuse of a position of trust did not sufficiently recognize the magnitude of the crime committed by the defendant. *Hart*, 803 F.Supp. at 59–60. Defendant had been the Chief of Police for the City of Detroit for many years, and was convicted of embezzling more than 2.3 million dollars from the police department over a period of more than seven years. The trial court found that reliance on the § 3B1.3 increase "would fail to address the history of defendant's abuse and exploitation of his power and authority over this major metropolitan police force." *Id.* at 59. The court noted that the defendant had taken an oath to uphold the law and protect the citizens of Detroit, yet had descended to a corrupt course of action and looted the police department's own funds. *Id.* at 60. The court ruled:

> To suggest that ... § 3B1.3 adequately takes into account Defendant's position as chief of police is to equate this with an ordinary low-ranking corporate, business or public officer, such as e.g. a postal clerk, who takes advantage of his or her limited position of trust to embezzle or misapply funds. To equate defendant's conduct and situation and position with such common embezzlers would be indeed a travesty.

*Id.*

In the instant case, similar considerations support an upward departure from the guidelines range. Defendant was the director of the state agency responsible for estimating the state's revenue and expenses for the Michigan House of Representatives; he also supervised the analysis of and the making of recommendations with respect to the state's budget and bills which appropriate or otherwise affect state funds. Furthermore, he had sole responsibility for the monitoring and dispersal of monies in the agency's cash imprest fund. As a result of this high position of trust and responsibility, defendant was able to embezzle from state taxpayers 1.114 million dollars through a series of frequent transactions. This money was used by both defendant and his friends and acquaintances to fund their own personal financial dealings. Clearly, defendant breached his duties not only to the House of Representatives but also to the people of the State of Michigan. His conduct far surpassed that of the ordinary run-of-the-mill embezzler who steals public funds, and accordingly, in this Court's judgment, his sentence should exceed that of the ordinary embezzler. An upward departure from the sentencing guidelines range of 41 to 51 months is clearly warranted in light of the degree of the defendant's high-ranking position and the degree of his breach of the public's trust.

### III. Loss of Public Confidence in an Institution of State Government

Another significant factor in the Court's sentencing decision today is the loss of public confidence in the House Fiscal Agency in particular, and in the House of Representatives and the state legislature in general, which the defendant's criminal activity has occasioned. This is another factor not taken into consideration by the guidelines, and thus it also supports an upward departure from the guidelines range.

Although the sentencing guidelines do not specifically provide for an increase in the offense level where a defendant's conduct has resulted in a loss of public confidence in an important institution, the guidelines do recognize that an upward departure might be appropriate under such circumstances. Section 2F1.1 of the sentencing guidelines addresses offenses involving fraud and deceit. Application Note 10(e) to that section states:

> In cases in which the loss determined under subsection (b)(1) [of § 2F1.1] does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted. Examples may include the following:
>
> (e) the offense caused a loss of confidence in an important institution....

U.S.S.G. § 2F1.1, Application Note 10(e). This commentary has been applied in cases involving embezzlement to support upward departures from the sentencing guidelines. In *United States v. Fousek*, 912 F.2d 979 (8th Cir.1990), the Eighth Circuit considered whether a district court properly departed

upward in sentencing a bankruptcy trustee who pleaded guilty to embezzlement of funds he had held as trustee. The Court of Appeals found that the sentencing court had acted properly in departing upward under this application note. *Id.* at 981.[3] The court then went on to reject the defendant's argument that there must be some proof that the criminal conduct actually caused a loss of public confidence before departure could be justified. The court stated:

> We conclude that no such evidence was necessary, for when a person in a position of public trust ... embezzles money from those he is bound to aid, it stands to reason that there will be some resulting loss of public confidence in that institution.

*Id.* The district court in *Hart,* 803 F.Supp. at 65–66, reached a similar conclusion. In that case, the court concluded that the defendant's illegal conduct while he was chief of police justified an upward departure because

> [the criminal] convictions could not help but be devastating to the public's confidence in an already overburdened police department.

*Id.* at 66.

In the present case, the revelation of defendant's long-term criminal activity at the HFA, which resulted in the loss of over 1.114 million dollars, has clearly resulted in a loss of the public's confidence in that agency in particular, and in the institution of state government in general. The revelation of these crimes has exposed numerous problems with the supervision and operation of the HFA, and has resulted in the indictment of other key players in both state and federal court. Much of the exposed information has proven highly embarrassing, not only to the state legislature and the leaders of the House of Representatives at the time of defendant's conduct, but also to the many employees at the HFA and within the state government in general who have striven to perform their jobs in an honest and effective manner. The damage caused by the defendant's illegal activities thus goes far beyond the mere dollar loss to the HFA.

The application note cited above recognizes that departure may be warranted in cases of fraud or deceit where there is a loss of confidence in an important institution. This note has been applied to support upward departures in cases involving embezzlement. *See Fousek,* 912 F.2d at 981; *Hart,* 803 F.Supp. at 65–66. As repeated acts of embezzlement constitute the predicate acts upon which the RICO count in this case is based, the Court determines that an upward departure is warranted pursuant to the language of Application Note 10(e) to § 2F1.1 of the sentencing guidelines.

## IV. Disruption of Governmental Function

As a final basis for departure, the Court finds that the defendant's misappropriation of the limited financial resources of the State of Michigan and the significant disruption of governmental functions which the defendant's criminal conduct occasioned also justify an upward departure from the sentencing guidelines range. These grounds for departure are set forth in § 5K2.7 of the sentencing guidelines. That provision specifies:

> If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

U.S.S.G. § 5K2.7. *See Heckman,* 30 F.3d 738, 742–43 (6th Cir.1994).

As this guidelines section states, disruption of governmental functions is inherent in crimes such as bribery and, accordingly, upward departure is generally not warranted in

---

**3.** At the time of the *Fousek* decision, the relevant language appeared in Application Note 9(e) to § 2F1.1.

such cases. The Sentencing Commission has indicated, however, that when the conviction is for a crime such as theft "and the theft caused disruption of a governmental function, departure from the applicable guideline range more readily would be appropriate." U.S.S.G. § 5K2.0. Thus, courts have departed upward on grounds of disruption of governmental function where the criminal defendant embezzled government funds. In *Burns*, 893 F.2d at 1347, for example, the Court of Appeals for the District of Columbia ruled that the district court had acted reasonably in departing upward on this ground. The defendant was the financial supervisor of a federal agency who embezzled money from the agency on 53 different occasions over the course of six years. *Id.* at 1345. The court stated:

> We reject [defendant's] argument that this was not an appropriate case for such departure. ... [T]he record indicates that he diverted government resources and used federal mechanisms to perpetrate his crimes. Such misuse of the government's vendor payment process is clearly disruptive; it diverts federal resources from legitimate to illegitimate recipients.... [Moreover,] [defendant's] manipulation of [the agency's] procurement apparatus required the unwitting assistance of many government personnel, who were diverted from their legitimate tasks by the demands of his scheme.

*Id.* at 1347; *see also Hart*, 803 F.Supp. at 66–69 (upward departure in sentencing of police chief for embezzlement justified, as money he illegally took was earmarked for law enforcement activities and thus defendant's criminal conduct negatively impacted on the ability of the police department to protect the citizens of the community).

In this case, defendant's repeated acts of embezzlement at the HFA and their subsequent discovery resulted in a serious disruption of governmental activities. During a period of time in which the State of Michigan faced an ongoing budget crisis, scarce state monies were being diverted from legitimate

purposes to fund the personal financial dealings of defendant, his personal friends, and his associates. Placing persons on the government payroll who were performing no government function and processing the many imprest checks involved in this scheme also clearly required the unwitting assistance of many government employees who were diverted from their legitimate tasks by the demands of his scheme.[4] Finally, the revelation of defendant's criminal activities resulted in his resignation and that of many other state employees, and caused a massive upheaval at the HFA and the House of Representatives; the HFA has been completely reorganized, the chairman of the House Committee responsible for oversight of the HFA was forced to resign from both that committee and as chairman of the powerful House Appropriations Committee, a former employee of the HFA was forced to resign from the House of Representatives, and the fallout from the ensuing scandal likely still continues today.

In this Court's opinion, therefore, the defendant's actions resulted in a misappropriation of the limited financial resources of the state and a significant disruption of governmental functions to a degree not inherent in crimes such as bribery or embezzlement, and departure is warranted under § 5K2.7 of the sentencing guidelines.

### APPLICATION

The Court now turns to the sentencing table of the guidelines to determine the appropriate range in light of the above factors. In the presentence report, the Probation Department concluded that defendant had a total offense level of 22, and thus that a sentence in the range of 41 to 51 months was appropriate. In the Court's opinion, a sentence within this range would not reflect the magnitude of the defendant's crime. In light of the duration and repetitiveness of the defendant's criminal conduct, defendant's unique responsibilities to the public, the loss of public confidence in an institution of state government, and the significant disruption of

---

**4.** Although the defendant's personal secretary appears to have knowingly prepared many of these checks, the unwitting assistance of other state employees as part of their daily work was also necessary to effectuate payment.

governmental functions which the defendant's actions occasioned, departure from the guidelines range is justified. *See U.S. v. Head,* 927 F.2d 1361, 1367 (6th Cir.1991) (sentencing court must clearly articulate its reasons for departing from the guidelines); *U.S. v. Kennedy,* 893 F.2d 825, 827 (6th Cir.1990) (same).

■ Next, the Court must demonstrate that the sentence under each of the next higher offense levels is too lenient before moving to a higher offense level. *Gray,* 16 F.3d at 683; *Carr,* 5 F.3d at 994. The Sixth Circuit has indicated that a "conclusory statement that the sentences imposed by [the next category] are too lenient is not a 'demonstration' or reasonable explanation." *United States v. Lassiter,* 929 F.2d 267, 271 (6th Cir.1991) (citation omitted).

In this case, the Court concludes that a total offense level of 30, with a sentencing guidelines range of 97 to 121 months, is the appropriate level for purposes of sentencing, prior to consideration of the government's request for a downward departure for substantial assistance pursuant to § 5K1.1 of the guidelines. To explain its increase from offense level 22, which provides for a sentence between 41 and 51 months, to level 30, the Court now addresses each intervening offense level, and why its corresponding sentencing range is not appropriate.

The Court first looks to offense level 23, which provides for a range of 46 to 57 months. The maximum period of time, 57 months, is only 6 months longer than the range of 41 to 51 months applicable under offense level 22. The Court concludes that this additional six months does not begin to account for the duration and the repetitiveness of defendant's criminal enterprise. Defendant's criminal activities spanned some six years and involved literally hundreds of illegal transactions. The duration and the repetitiveness of defendant's conduct, standing alone, justify an incremental increase of more than six months. Accordingly, the next offense level of 24, with a range of 51 to 63 months, is more appropriate, based on the duration of the defendant's criminal acts and the frequency with which they occurred. At a minimum, a two-level increase in the of-

fense level, which represents an increase at the higher end of the sentencing range of 12 months, more reasonably reflects the gravity of the defendant's illegal behavior.

A guidelines offense level of 24, however, does not consider the defendant's position as the director of a state agency who had unique responsibilities to the legislature and to the public. In the Court's opinion, defendant should receive a further increase in the offense level due to his breach of his duties to the legislature and the public. An increase to the next offense level, 25, with a sentencing range of 57 to 71 months, however, does not adequately account for the damage to the public trust which defendant's conduct has occasioned. At a minimum, in this Court's opinion, the defendant's offense level should be increased to offense level 26. This level results in a range of 63 to 78 months, which this Court believes more fully recognizes both the duration and the repetitiveness of the defendant's criminal conduct, and the serious breach of his public duties and responsibilities.

The Court next considers the loss of public confidence in an institution of the state government, the misappropriation of limited financial resources of the state, and the significant disruption of governmental functions which the defendant's conduct occasioned. At a minimum, the loss of public confidence in the HFA and state government, by itself, justifies an increase in the offense level to level 28. An increase to level 27 would result in a guidelines range of 70 to 87 months, which is only nine months more than the maximum sentence permitted under level 26. Nine months does not begin to account for the irreparable damage that defendant's criminal activities caused to the reputation of the House Fiscal Agency and the state legislature. Moreover, nine months does not adequately address the serious damage which defendant's conduct did to the institution of state government in general. At a minimum, an increase to level 28, with a range of 78 to 97 months, is more appropriate based on the loss of public confidence in the HFA, the legislature and the state government which resulted from these crimes.

Finally, the misappropriation of limited financial resources of the state and the signifi-

cant disruption of governmental functions caused by the defendant's criminal behavior also require an additional increase in the total offense level. Defendant's actions diverted government resources and personnel from legitimate purposes to further his own criminal acts, and resulted in significant upheaval in the HFA and the House of Representatives. At a minimum, a two-level increase to level 30, with a sentencing guidelines range of 97 to 121 months, appropriately reflects the gravity of this result. An increase to level 29, with a corresponding increase in the maximum sentence of only nine months, would not appropriately consider the disruption caused by these criminal acts of fraud and embezzlement. Offense level 30 imposes a more reasonable sentencing range in light of the consequences resulting from the defendant's behavior.

In summary, the four grounds for upward departure result in an offense level of 30, with a corresponding guidelines range of 97 to 121 months, prior to consideration of any downward departure on the basis of substantial assistance. This level adequately accounts for the duration and the repetitiveness of defendant's actions, his unique responsibilities to the public, the loss of public confidence in the HFA and the state government, and the misappropriation of limited financial resources of the state and the significant disruption of governmental functions caused by the defendant's conduct, factors of either a kind or a degree not taken into consideration by the Sentencing Commission in formulating the guidelines.

## SUBSTANTIAL ASSISTANCE TO THE GOVERNMENT

■ The Court next turns to consideration of the government's motion for a four-level downward departure, pursuant to § 5K1.1 of the sentencing guidelines, based on defendant's substantial assistance to the government.

The government's motion is committed to the discretion of the Court. *United States v. Brummett*, 786 F.2d 720, 723 (6th Cir.1986); *Goff v. United States*, 965 F.2d 604, 605 (8th Cir.1992). In exercising this discretion, the Court must consider the factors enumerated in Sentencing Guidelines § 5K1.1.[5]

The nature and extent of defendant's assistance is described by the government as follows: Defendant's cooperation has occurred in two jurisdictions. He has testified at the preliminary examinations in two state court cases, *People v. John Binion*, Ingham County Circuit Court Case No. 94–67730–FH, and *People v. Dwight Anderson*, Ingham County District Court Case No. F94–3552–AG. The government contends that investigators who observed defendant's testimony were of the opinion that it was truthful and complete, and noted that he made no effort to minimize his own wrongdoing. The government also relies on defendant's assistance to federal investigations, but declines to provide details because of grand jury secrecy and a desire to avoid unnecessary pretrial publicity with respect to other defendants. The government states that defendant's federal testimony also appeared to be truthful and complete. Further, the Court has reviewed the presentence investigation report and the addenda to that report prepared by the United States Probation Department. The addendum dated August 11, 1994, confirms to the Court that defendant has provided additional assistance subsequent to the initial presentence report.

---

5. Section 5K1.1 provides:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

Having duly considered the nature and extent of defendant's assistance in light of the factors set forth at U.S.S.G. § 5K1.1, the Court concludes that the government's motion should be granted. Defendant has provided testimony in two state court proceedings which the government considers to have been truthful and unreserved and which resulted, in the *Binion* case, in the defendant being bound over for trial. He has also provided substantial assistance to the government in connection with the federal investigation. The Court further finds that the defendant's total offense level for purposes of sentencing on Count 1 should be reduced from level 30 to level 26, which provides for a sentence in the range of 63–78 months. Finally, after consideration of the factors set forth in 18 U.S.C. § 3553, the Court finds that a sentence at the maximum of this guidelines range in the amount of 78 months is appropriate for the reasons set forth herein. Under the terms of the plea agreement between the defendant and the government, this sentence for Count 1 gives defendant the right to withdraw his plea.

In the event the defendant elects to withdraw his plea, trial will commence on a date to be set by the Court. If defendant elects not to withdraw his plea, a judgment in accordance with this memorandum opinion, and setting forth the additional terms of the defendant's sentence, shall issue forthwith.

**IT IS SO ORDERED.**