**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                      No. 98-4502

ANTHONY EATON,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CR-97-454-JFM)

Argued: December 3, 1998

Decided: February 2, 1999

Before MURNAGHAN and MICHAEL, Circuit Judges, and
HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Charles Kay, Assistant United States Attorney,
Baltimore, Maryland, for Appellant. Herbert Better, ZUCKERMAN,
SPAEDER, GOLDSTEIN, TAYLOR & BETTER, L.L.P., Baltimore,
Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United
States Attorney, Baltimore, Maryland, for Appellant. Zoe M. Gillen,
ZUCKERMAN, SPAEDER, GOLDSTEIN, TAYLOR & BETTER,
L.L.P., Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Before us is the government's appeal from the district court's decision to depart downward from the Sentencing Guidelines on the basis of "aberrant behavior." The behavior in question was comprised of two trips to Jamaica over a three-week period.[1] Other than those criminal episodes, the defendant has been a hard working, model citizen. The government contends that the district court's reliance on the "aberrant behavior" departure in light of Eaton's two separate trips is erroneous because it directly conflicts with our precedent.

I.

Anthony Eaton flew from Baltimore to Jamaica on October 10, 1997, carrying an unknown amount of money with him. Willie Fryson, whose nickname is "Card," gave Eaton the money. Two days later, Eaton returned to Baltimore with unknown quantities of cocaine. The government estimates that, based on the size and weight of the package, Eaton was carrying approximately 500 grams to two kilograms of cocaine.

Approximately three weeks later, on October 31, Eaton boarded another flight to Jamaica, this time carrying $20,000. However, he was arrested by U.S. Customs agents. He never advised Customs that he was carrying such a large amount of money.

The government charged Eaton with conspiracy to import cocaine in violation of 21 U.S.C. § 963. In January 1998, Eaton entered into

_____

[1] Actually, Eaton made one round trip from Baltimore to Jamaica between October 10-12, 1997. When he attempted to make a second trip to Jamaica three weeks later (October 31), he was arrested. Thus, Eaton's conduct consists of three separate acts on three separate days.

2

a plea agreement in which he agreed to cooperate with the government.

At the sentencing hearing held on May 12, 1998, the government moved for a downward departure of two levels under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) for substantial assistance. Eaton requested a downward departure on grounds of aberrant behavior. The district court granted Eaton's request, stating that it did not "think that the fact that somebody sins twice in a short period of time . . . is really legally distinct from somebody doing something just once." It then departed eight levels from level eighteen to level ten. The court declined to base the departure on cooperation.

II.

We review a district court's decision to depart from the Sentencing Guidelines for abuse of discretion. See Koon v. United States, 518 U.S. 81, 91 (1996). Departures based on erroneous conclusions of law are considered an abuse of discretion. See id. at 100.

The government argues that the district court's conclusion that the defendant's three acts on three separate days constituted a single act of aberrant behavior is directly contrary to our prior holding in United States v. Glick, 946 F.2d 335, 338 (4th Cir. 1991).[2] In Glick, we addressed an appeal by the government from a sentencing departure for aberrant behavior where the defendant had mailed five documents containing confidential company information on five separate days over a ten-week period. See id. at 337. Because the activities were part of the same criminal enterprise, the district court concluded that they amounted to a "single" aberrant act. See id.

We rejected that reasoning, however, concluding that Glick's "extensive planning, number of actions involved, and length of time over which [he] planned and perpetrated his offense" demonstrated that the case was not one involving aberrant behavior. In noting that aberrant behavior means more than first offense, we explained that our inter-

_____

[2] The district court expressly chose not to depart on the basis of cooperation, a departure that even the government acknowledges would be appropriate.

3

pretation of the departure for single acts of aberrant behavior contemplated "`a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning . . . .'" Id. at 338 (citation omitted). Finally, we confined the term "single act" to its literal meaning, rather than interpreting the phrase to encompass "a series of actions calculated to further criminal misconduct." Id. at n* (rejecting the Ninth Circuit's approach to the definition of aberrant behavior).

Using the analysis set forth in Glick, the district court's departure based on aberrant behavior in the instant case cannot stand. Even if Eaton did not plan the entire criminal enterprise, as he claims, he did take money into Jamaica and return to Baltimore with a large quantity of cocaine. He then attempted to return to Jamaica with another large sum of money. That necessarily involved some planning on his part. He committed three criminal acts, on three separate days (October 10, 12 and 31, 1997).**3** Finally, Eaton's criminal activities spanned three weeks. Therefore, for the same reasons that Glick's conduct was not aberrant, Eaton's conduct is not aberrant.

Eaton's arguments to the contrary are not persuasive. He first contends that we must revisit Glick in light of Koon v. United States, 516 U.S. 81, 91 (1996), because Koon created an abuse of discretion standard for departures from the Guidelines and created virtually limitless avenues for departures, including departures for multiple acts of aberrant behavior. That argument is misplaced. Eaton is correct in asserting that Koon creates an abuse of discretion standard for departures from the Guidelines. See id. However, Koon also recognized that errors of law are abuses of discretion. See id. at 100.

Moreover, Eaton misunderstands what the district court did. The district court did not create a new departure for multiple acts of aberrant behavior; rather, it stated that the multiple acts committed by

_____

**3** Eaton and the government dispute the severity of the crime with which he could be charged for transporting the money into Jamaica. The government claims that he violated 18 U.S.C. § 1956(a) (1996), a money laundering statute. By contrast, Eaton claims that he only violated 31 U.S.C. § 5316 (1996), a statute requiring the reporting of the transportation out of the country of sums in excess of $5,000. In any event, his activity was criminal.

4

Eaton were legally equivalent to the single act contemplated by the Guidelines. <u>See</u> App. at 29 ("I don't think that the fact that somebody sins twice in a short period of time, commits two different acts of sin, if that is what it be, is really legally distinct from somebody doing something just once."). Thus, the Supreme Court's recognition in <u>Koon</u> of a district court's discretionary authority to depart from the Guidelines on bases not set forth therein simply is not implicated in the instant case. On the other hand, <u>Glick</u>, which defines a "single act of aberrant behavior" in our circuit, is implicated and controls.

Eaton's other arguments are similarly unfounded. He argues that our definition of single act is "absurd," and points out that both the First and Eighth Circuits have rejected our definition of a single act of aberrant behavior. <u>See United States v. Kalb</u>, 105 F.3d 426, 429-30 (8th Cir. 1997); <u>United States v. Grandmaison</u>, 77 F.3d 555, 563 (1st Cir. 1996). However, a closer look at <u>Kalb</u> reveals that the court merely concluded that departures for aberrant behavior need not be confined to "single acts." <u>See id.</u> at 429 n.2 ("The inquiry after <u>Koon</u> is whether any other kind of `aberrant behavior' may ever warrant a departure.").**4** <u>Grandmaison</u> expanded the aberrational behavior departure to an extent that we expressly rejected in <u>Glick</u>. <u>See Grandmaison</u>, 77 F.3d at 563. Therefore, neither case helps Eaton.

Eaton also argues that: (1) the reference in the Guidelines to "single acts of aberrant behavior," <u>see</u> U.S.S.G., Ch. 1, Pt. A, 4(d) (1997), makes no mention of the concepts of "spontaneity" or "thoughtless-ness"; and (2) such a restrictive view of aberrant acts essentially guar-antees that no one could ever meet the test.

_____

**4** Eaton and the government dispute whether aberrant behavior is a neu-tral factor (<u>i.e.</u>, neither encouraged nor discouraged) or an encouraged factor. While neutral factors -- factors the Commission expressly allow but do not assign value to -- are to be employed only where they exist to such an extent that the case is no longer in the heartland, <u>see United States v. Brock</u>, 108 F.3d 31, 35 (4th Cir. 1997), encouraged factors may freely be considered because the only problem was that the Commission simply did not consider them. <u>See Koon</u>, 518 U.S. at 94. Based on the Commission's statement that it "has not dealt with the single acts of aberrant behavior," <u>see</u> U.S.S.G. § 14(d), it appears that it is an encour-aged factor, because the guideline acknowledges that it has not ade-quately addressed the issue.

While it is true that the Guidelines do not mention the words "spontaneous" or "thoughtless," it is also true that the Guidelines provide no definition or guidance for interpreting the phrase "single act of aberrant behavior." The Seventh Circuit, in United States v. Carey, 895 F.2d 318, 325 (7th Cir. 1990), reasoned that "spontaneous" and "thoughtless" acts more aptly fit the definition of "aberrational behavior" because such acts are more likely to be atypical or "aberrant" than are acts that are "the result of substantial planning." Id. We agreed with that assessment in Glick, as that view properly takes into account the concept that "aberrant behavior" means more than simply that it is the defendant's first offense. See id. (noting that the Guidelines already considered the treatment of first offenders in 28 U.S.C. § 994(j)). Once a defendant engages in an ongoing criminal enterprise that requires some planning, as Eaton has, the behavior is less aberrant.

Moreover, the departure is not completely unavailable to a defendant. The Carey court stated that the type of behavior qualifying for a departure on the basis of aberrant behavior resembles that of Robert Russell in United States v. Russell, 870 F.2d 18, 19-20 (1st Cir. 1989). In that case, the defendant was an armored truck driver who decided to keep some extra money mistakenly handed to his partner as the two were making a delivery. See id. at 19. Russell's conscience prevailed and he returned the money a week later, admitted guilt, and fully cooperated with the government. See id. While we make no judgment as to whether Russell's behavior passes muster under Glick, it is clear that Russell's actions more closely fit the paradigm of "aberrant behavior" than do Eaton's.[5] More generally, we note that departures are by definition intended to be rare; they are reserved for the exception that takes the case out of the "heartland" of cases for which defendants receive similar sentences. See Koon , 518 U.S. at 98; Brock, 108 F.3d at 34.

_____

[5] In Grandmaison, the First Circuit stated that those adhering to our view must recognize that even Russell involved more than just a single act (i.e., his decision to take the money, his keeping it for a week). However, the number of actions involved is just one of the factors that we analyzed in refusing to depart in Glick. Russell's actions involved neither the level of planning nor the length of time that Eaton's actions did.

Finally, Eaton argues that he is an otherwise model citizen who suffered from a temporary lapse in judgment. We do recognize that Eaton is a hard working, generally good citizen with no prior criminal background who allowed life's pressures to get the better of him. However, when he was arrested, he was attempting to make his second trip to Jamaica to participate in his in-laws' criminal endeavors. There was no evidence that the second trip would be his last. As a result, we cannot conclude that his behavior was aberrant. Moreover, as we stated, "single act of aberrant behavior" is not synonymous with "first offense." See Glick, 946 F.2d at 338.

III.

In addition, the government has argued that the district court relied on forbidden factors, such as socio-economic status, in departing downward in Eaton's sentence. See Koon, 518 U.S. at 93-94 (stating that the Commission forbids consideration of economic hardship and socio-economic status is departing from the Guidelines). However, in light of our finding that the district court misconstrued the definition of a single act of aberrant behavior, we need not address that issue.

Accordingly, we vacate Eaton's sentence and remand the case to the district court to resentence him without relying on the departure for aberrant behavior.

VACATED AND REMANDED